UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE B., by his next friend, John
Stempfle; et al.,

      Plaintiffs,

v.

JENNIFER GRANHOLM, et al.,

      Defendants.
                               /

Case No. 06-13548

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS [16]**

    This lawsuit seeks class-wide declaratory and injunctive relief to remedy alleged ongoing failures of Michigan's Governor, the Director of Michigan's Department of Human Services ("DHS"), the Director of DHS Operations, and the Director of DHS Children's Services (collectively "Defendants") to care for and protect Michigan's foster children and to provide them and their families the child welfare services required by the United States Constitution and federal law. This matter is before the Court on Defendants' motion to dismiss.

    Defendants' motion is DENIED because: (1) Plaintiff Children's representatives do not lack the capacity to bring this lawsuit on their behalf, (2) Plaintiff Children's complaint satisfies the threshold pleading requirements for Article III standing, and (3) this case does not present the sort of exceptional circumstances that justify a federal court's refusal to decide a case in deference to the State.

**I.    Background**

Plaintiff Children allege that Defendants – each an official responsible for the administration of DHS – operate a foster care system that fails to protect the safety and well-being of the children entrusted to its care, in violation of the United States Constitution and federal law.  The named Plaintiff Children's complaint seeks, for themselves and for the nearly 19,000 similarly situated children lingering in state foster care, the declaratory and prospective injunctive relief they claim is necessary to fix Michigan's child welfare system so that it complies with their constitutional and federal rights.  Their complaint alleges the following.

Myriad systemic failings injure foster children in Michigan, including the named Plaintiffs, because Defendants:  (1) fail to ensure that overloaded caseworkers make even the bare minimum monthly visits to foster children necessary to monitor their safety and well-being; (2) place approximately 40% of foster children with unlicensed relatives, who do not receive the financial and other support provided to non-relative foster care providers; (3) fail to find permanent families for a growing population of children who are legal orphans growing up in foster care; and (4) fail to recruit and maintain foster and adoptive homes sufficient to meet the foreseeable needs of children coming into foster care.  (*See generally* Compl. ¶¶ 96-208.)  These systemic deficiencies have been known to Defendants for years (*see* Compl. ¶¶ 89-95) and cause harm to the named Plaintiff Children and those similarly situated in the foster care system by threatening their basic health, safety, education, security, stability, and well-being.  (Compl. ¶¶ 96-208.)

**II.   Motion to Dismiss Standard**

A Rule 12 (b) (6) motion to dismiss tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996). This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). A court should not grant a 12(b)(6) motion unless the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court's function "is not to weigh the evidence or assess the credibility of witnesses but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003) (internal citations omitted).

### III.   Analysis

Defendants' motion argues that Plaintiffs' lawsuit must be dismissed, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), because: (1) Plaintiff Children's representatives lack the capacity to bring this lawsuit on their behalf, (2) Plaintiff Children's complaint fails to satisfy the threshold pleading requirements for Article III standing, and (3) this Court should abstain from exercising its jurisdiction over this lawsuit under either the *Younger* or *Burford* abstention doctrines. This Court addresses each of these arguments

in turn.

### A.  Whether The Named Plaintiffs' Representatives Have Capacity to Sue

Defendants first argue that the named Plaintiffs' representatives do not have the capacity, under the law of the forum state (Michigan), to bring this lawsuit, and thus it must be dismissed.  This Court disagrees.

Defendants correctly construe Federal Rules of Civil Procedure 17(b) and 17(c) and observe that the forum state's capacity rules govern who may bring suit in federal court when acting in a representative capacity.  Fed. R. Civ. P. 17(b)[1], 17(c)[2]  *See Brimhall v. Simmons*, 338 F.2d 702, 706 (6th Cir. 1964) (construing Fed. R. Civ. P. Rules 17(b) and (c) and holding that "the capacity to sue by one acting in a representative capacity shall be determined by the law of the state in which the district court is held.").  Defendants' argument for dismissal, however, is premised on a misinterpretation of Michigan law.

---

[1]Federal Rule of Civil Procedure 17(b) provides in pertinent part that:

> **(b)  Capacity to Sue or be Sued.**  The capacity of an individual, <u>other than one acting in a representative capacity</u>, to sue or be sued shall be determined by the law of the individual's domicile. . . .  In all other cases capacity to sue or be sued <u>shall be determined by the law of the state in which the district court is held</u> . . . .

Fed. R. Civ. P. 17(b) (emphasis added).

[2]Federal Rule of Civil Procedure 17(c) provides in pertinent part that:

> **(c)  Infants or Incompetent Persons**.  Whenever an infant . . . has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person.  An infant . . . who does not have a duly appointed representative, may sue by a next friend or by a guardian ad litem.  The court shall appoint a guardian ad litem for an infant . . . not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant . . . .

Michigan's Probate Code addresses the duties/powers of a lawyer-guardian ad litem ("guardian ad litem") appointed to represent a juvenile in juvenile court proceedings. Mich. Comp. Laws Ann. § 712A.17d. That statute expressly requires the lawyer-guardian ad litem "[t]o request authorization by the [probate] court to pursue issues on the child's behalf that do not arise specifically from the court appointment." Mich. Comp. Laws Ann. § 712A.17d(1)(l). Accordingly, Defendants argue that, because the two guardians ad litem identified in Plaintiff Children's complaint as the next friend of Plaintiffs Dwayne B., Carmela B., or Julia, Simon and Courtney G. have not sought prior juvenile court approval to serve as next friends in this federal court action, they lack the capacity under state law to bring this suit. Defendants are mistaken.

The Michigan courts have long recognized that Michigan's statutes and court rules addressing the appointment of guardians ad litem by the probate court judge contemplate the appointment as being restricted to representation of the minor in the matters being prosecuted in the probate/juvenile court; not other courts. *See King v. Emmons*, 277 N.W. 851, 854 (Mich. 1938) (observing that "it was not intended by this rule to attempt to vest the probate court with authority to appoint a next friend for the purpose of instituting litigation in the circuit court. That power is vested by statute in the circuit court itself."); *Powell v. Monolidis*, 408 N.W.2d 525 (Mich. Ct. App. 1987) (construing Michigan's substantive and procedural law and holding that the State probate court's appointment of a conservator to oversee a minor's estate did not deprive that State's trial court of authority to appoint a next friend for the minor in a medical malpractice action). *See also* 3 *Mich. Pleading & Practice*, Guardians ad Litem and Next Friends, § 28:1 (observing that "[a] 'guardian ad litem' is a guardian appointed to represent a ward in legal proceedings in which the ward is a party

5

plaintiff" and, in contrast, "[a] 'next friend' is a person who appears in a lawsuit to act for the benefit of an incompetent or minor plaintiff but who is not a party to the lawsuit and is not appointed as a guardian.")  Mich. Comp. Laws Ann. § 712A.17d(1)(l) does not preclude Plaintiff Children's next friends from filing suit on their behalf in federal court,[3] and Defendants cite no other Michigan authority precluding their capacity to bring this lawsuit.

Defendants further argue that, because neither this Court nor any state court has appointed Teresa Kibby as next friend for Plaintiff Lisa J, she too lacks the capacity to bring this lawsuit on Plaintiff Lisa J's behalf.  Because Defendants cite no statutory or other substantive legal authority as support, this argument is rejected.

This Court also rejects Defendants' argument that Michigan's court rules; i.e., Mich. Ct. R. 2.201(E)(2), govern the appointment of a representative for a minor bringing suit in federal court.  Because this raises a procedural matter (not one of substance), the Federal Rules of Civil Procedure govern.

Rule 17(c) of the Federal Rules of Civil Procedure provides that "[w]henever an infant . . . has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue . . . on behalf of the infant. . . ." It further provides that

---

[3]Even if this statute did apply, it would not require dismissal of this action.  Rather, Plaintiff Children's representatives would need only to obtain the permission of the juvenile court to pursue this action.  In the absence of such permission, the Court could appoint a next friend for the named Plaintiff Children.  Rule 17(a) provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action . . . ", and Rule 17(c) directs that "[t]he Court shall appoint a guardian ad litem for an infant . . . not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant. . . ."

6

"[a]n infant . . . who does not . . . may sue by a next friend. . . ." There is no requirement under Rule 17(c) that a next friend obtain prior court authorization to commence suit on behalf of a minor child.

Each named Plaintiff has commenced suit through a competent and suitable next friend pursuant to Rule 17(c). Because the named Plaintiffs, like other foster children, have been removed from home and have had their preexisting ties to family and friends effectively severed, they have few, if any, significant relationships with adults who are suitable and willing to act as "next friends." The named Plaintiffs in this case appear through next friends whom they have stated they have come to know through their involvement in Michigan's foster care system. Dwayne B., Carmela B., and the G. siblings appear through their next friends who also serve as their court-appointed lawyer-guardian ad litems in the Wayne County juvenile court. (Compl. ¶¶ 70, 71, 73.) Named Plaintiff Lisa J. appears through her next friend Teresa Kibby. As the former licensed foster parent for Lisa J's sibling, Ms. Kibby is well acquainted with the circumstances leading to Lisa J's entry into care and the later termination of her parents' custodial rights. (Compl. ¶ 72.) She is, therefore, adequately informed and appropriately positioned to act on Lisa J's behalf in this lawsuit. Defendants do not challenge the competency or suitability of these next friends.

Having rejected Defendants' first argument for dismissal, the Court now turns to its second argument.

**B.  Whether Plaintiffs Have Alleged Facts Showing Standing To Sue**

Defendants next argue that Plaintiff Children lack Article III standing to pursue their

7

claims for prospective injunctive relief and thus their lawsuit must be dismissed. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff Children respond that they have met their burden at this early stage of the litigation by sufficiently pleading facts that satisfy Article III's standing requirement. This Court agrees with Plaintiffs. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561 (internal quotations and citation omitted).

Article III standing requires allegations that: (1) Plaintiffs suffered an "injury in fact" – "an invasion of a legally protected interest" that is both concrete and particularized and actual or imminent (as opposed to hypothetical or conjectural); (2) there is a causal connection between the injury and Defendants' conduct; and (3) it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61 (internal quotations and citation omitted).

Here, unlike in *Lujan*, Plaintiff Children are themselves "the object of the government action or inaction" that they challenge. *Id.* at 562. Accordingly, as the Supreme Court observed, "there is ordinarily little question that the action or inaction has caused [the plaintiff's] injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 561-62. Defendants' arguments, that actors other than Defendants could have been a cause of the harms Plaintiffs allege and thus their harms are not likely to be redressed by a favorable decision, are both improper and premature. (Defs.' Mot. at 10; Reply at 2.)

At this stage of the litigation, the Court must assume that the plaintiff's factual allegations are true and draw all reasonable inferences flowing from those allegations in

8

Plaintiffs' favor.  *Id.* at 560-61; *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).  Thus, it is improper on a Rule 12(b)(6) motion to consider facts not alleged in Plaintiffs' complaint and to ignore those that are alleged.  It is also premature to argue that Plaintiffs have not established (as opposed to pled) the requirements for Article III standing.  These arguments are properly considered on a Rule 56 motion for summary judgment.

Applying the proper Rule 12(b)(6) standard, this Court observes that Plaintiff Children's complaint alleges numerous system-wide failures in Michigan's child welfare system that have caused, and will cause (unless redressed as requested) actual, particularized harms to Plaintiffs who are in that child welfare system.  It sufficiently alleges that these systemic failings threaten imminent, continuing harms to Plaintiffs' constitution and federal statutory rights can be remedied by the prospective injunctive relief they seek in this lawsuit.  Specifically, as to Plaintiff Children in general, it is alleged that: (1) excessive caseloads and inadequate monitoring of caseworkers results in abuse and neglect of Plaintiffs by unfit caretakers (Compl. ¶¶ 99-102, 118, 120-21); (2) inappropriate placements and excessive moves between placements harm Plaintiffs by violating their legally protected interests (*id.* at ¶¶ 143-46); (3) the lack of adoption caseworkers and inadequate procedures to encourage adoption similarly cause Plaintiffs harm (*id.* at ¶¶ 160-62, 165-66); and (4) the failure to deliver basic health care services to Plaintiffs also causes them harm (*id.* at ¶¶ 170-75).  Plaintiffs further assert that their allegations of specific, concrete harms caused by these chronic, systemic failures of Michigan's foster care system can be remedied by a prospective injunction that addresses Defendants' challenged conduct. (Compl. at 64.)  Contrary to Defendants' arguments here (Reply at 3), Plaintiffs' complaint need only seek injunctive relief that is "likely" to remedy Defendants' conduct that

9

they allege causes their harms; not injunctive relief that "assures" these injuries will be redressed. *Lujan*, 504 U.S. at 561.

The Court now addresses Defendants' final arguments that this Court should invoke abstention doctrines and decline to exercise its jurisdiction in this matter.

### C. Whether Abstention Doctrines Should be Invoked

#### 1. Younger Abstention Doctrine

Defendants, invoking the abstention doctrine recognized in *Younger v. Harris*, 401 U.S. 37 (1971), argue that this Court should abstain from taking jurisdiction over this matter because Michigan's juvenile courts have continuing jurisdiction over each child in that state's child welfare system and thus these juvenile courts provide an adequate forum for asserting the claims raised here. This Court disagrees.

The Court begins its analysis by examining the Sixth Circuit's treatment of the *Younger* abstention doctrine, a judicially-created doctrine founded on notions of "comity" and "federalism." *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 431 (1982).

"The *Younger* abstention doctrine counsels a federal court to refrain from adjudicating a matter that is properly before it in deference of ongoing state criminal proceedings." *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 791 (6th Cir. 2004). There is no ongoing state criminal proceeding that touches on this litigation. Nonetheless, the *Younger* abstention doctrine "has been extended to include certain civil enforcement proceedings and civil proceedings uniquely involving the ability of state courts to perform their judicial functions, such as civil contempt orders or appellate bond requirements." *Id.* (citing *New Orleans Public Service, Inc. v. Council of the City of New Orleans ("NOPSI")*,

491 U.S. 350, 367-68 (1989)).  Despite this extension, the Sixth Circuit emphasizes that "it remains 'the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States.'"  *Id.* (quoting *NOPSI*, 491 U.S. at 368).  "There is no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.  The one or the other would be treason to the Constitution."  *Id.* (internal quotes and citations omitted).

A three-part inquiry, devised by the Supreme Court in *Middlesex County,* is used when determining whether the *Younger* abstention doctrine should be invoked: (1) would the federal proceeding interfere with "an ongoing state judicial proceeding;" (2) do the proceedings "implicate important state interests;" and (3) is there "an adequate opportunity in the state proceedings to raise constitutional challenges."  *Executive Arts*, 391 F.3d at 791-792 (internal quotations and citation omitted).  Considering these factors, this Court rejects Defendants' argument that this case presents the sort of exceptional circumstances that justify a federal court's refusal to decide a case in deference to the State.[4]

It is not disputed that Michigan has a strong interest in the welfare of children in its

---

[4] A number of federal district and appellate courts have considered and rejected Defendants' *Younger* arguments in substantially similar cases – federal lawsuits commenced by a putative class of foster children seeking prospective injunctive relief.  *See*, e.g., *Olivia Y. v. Barbour*, No. 3:04CV251LN (S.D. Miss. Aug. 29, 2006); *Olivia Y. v. Barbour*, 351 F. Supp.2d 543 (S.D. Miss. 2004); *Kenny A. v. Perdue*, 218 F.R.D. 277, 286 (N.D. Ga. 2003); *Charlie H. v. Whitman*, 83 F. Supp.2d 476, 514 (D. N.J. 2000); *Marisol A. v. Giuliani*, 929 F. Supp. 662, 689 (S.D. N.Y. 1996); *LaShawn A. v. Kelly*, 990 F.2d 1319, 1322-23 (D.C. Cir. 1993); *Baby Neal v. Casey*, 821 F. Supp. 320, 331-33 (E.D. Pa. 1993), *rev'd on other grounds, Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994); *L.H. v. Jamieson*, 643 F.2d 1351, 1354 (9th Cir. 1981).  *Cf. 31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003) (applying *Younger* abstention based on presumption that requested injunctive relief would interfere with juvenile court proceedings); *Carson P. v. Heineman*, ___ F.R.D. ___, No. 4:05CV3241, 2007 WL 172482 (D. Neb. Jan. 19, 2007) (among other things, relying on *31 Foster Children* decision and invoking the *Younger* abstention doctrine).

foster care system.[5]  Rather, the dispute here is over the first and third *Middlesex County* factors.

As to the first factor, Defendants' claim that there are ongoing judicial proceedings is misleading.  While it is true that Michigan has in place a juvenile court system that sets out procedures for bringing and maintaining a child under that court's jurisdiction and there may be some ongoing juvenile court proceedings for individual foster care children, this lawsuit does not seek to interfere with any such proceedings.  The relief sought here is not directed at the juvenile courts.  It is directed at the executive branch.  *See Brian A. v. Sundquist*, 149 F. Supp.2d 941, 957 (M.D. Tenn. 2000) (declining to invoke the *Younger* abstention doctrine in a similar suit brought on behalf of foster care children in the Tennessee Department of Children's Services and observing that "nothing in this litigation seeks to interfere with or enjoin" ongoing and pending state juvenile proceedings and further observing that the injunctive relief sought is against the executive branch and not the courts).

As to the third factor, this Court concludes, as did the district court in *Brian A.*, that the state juvenile courts "are not more appropriate vehicles for adjudicating the claims raised" in this class action.  *Id.* "Although technically Plaintiffs could raise constitutional questions in their individual juvenile proceedings, there is no pending judicial proceeding which could serve 'as an adequate forum for the class of children in this case to present its multifaceted request for broad-based injunctive relief' based on the Constitution and on federal and state

---

[5]Nonetheless, there are no "comity" or "federalism" concerns presented by this lawsuit because the State of Michigan has voluntarily agreed to federal oversight of its foster care system in exchange for federal funding.  (*See* Plfs.' Mot. at 11-13.)

12

law." *Id.* (quoting *LaShawn A. v. Kelly*, 990 F.2d 1319, 1323 (D.C. Cir. 1993)). This Court observes, as did the Court in *Brian A.*, that "[t]he Sixth Circuit Court of appeals 'has squarely held that abstention from hearing claims of institutional violation of rights guaranteed by the U.S. Constitution is inappropriate and federal courts must hear federal constitutional claims.'" *Id.* (quoting *Hanna v. Toner*, 630 F.2d 442, 444 (6th Cir. 1980)).

Defendants' reliance on *J. P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981), for a contrary result is misplaced. In that case, the Sixth Circuit considered whether the *Younger* abstention doctrine should have been invoked, thus requiring the district court to abstain from exercising jurisdiction over a class action challenge to Ohio's juvenile court procedures that allowed those courts to use social histories of juveniles appearing in pending matters. The plaintiff class sought to enjoin the juvenile court's use of those social histories in pending juvenile court proceedings. *Id.* at 1082. Because the plaintiff class's civil rights action, brought pursuant to 42 U.S.C. § 1983, interfered with those state juvenile court proceedings, the Sixth Circuit held that the *Younger* abstention doctrine should have been invoked and the district court should have abstained from exercising jurisdiction over that issue. It explained:

> The federal suit by appellant class clearly interfered with Cuyahoga County juvenile proceedings. The challenged practice[,] the juvenile court's predisposition use of social histories[,] is an integral part of the juvenile court's handling of cases. The relief granted [by the district court] entails ongoing federal court interference with the daily operation of the juvenile court.

*Id.* at 1084.

The Sixth Circuit went on, however, to distinguish the plaintiff class's challenge to the state's post-adjudication dissemination of juvenile social histories. *Id.* at 1085. In contrast to the plaintiff class's challenge to the state juvenile court's use of juvenile social histories

13

in judicial proceedings, this latter challenge did "not interfere in any manner with ongoing juvenile court proceedings." *Id.* Thus, the Court concluded, it was not appropriate for the district court to invoke the *Younger* abstention doctrine and decline to exercise jurisdiction over this second challenge. *Id.*

The same distinction applies here. Plaintiff Children's claims here do not interfere with Michigan's juvenile court proceedings. The injunctive relief they seek is directed to Michigan's executive branch, not its courts. Such relief, if granted, will not require ongoing federal court interference with the daily operation of Michigan's juvenile courts.

Defendants' reliance on the Sixth Circuit's decision in *Parker v. Turner*, 626 F.2d 1 (6th Cir. 1980), is similarly misplaced. In *Parker*, similar to *J.P.*, the federal action challenged the procedures of a state's juvenile court system. There, a putative class of indigent fathers brought suit against individual juvenile court judges in an effort to obtain an injunction forcing the juvenile courts in two Tennessee counties to change they way they adjudicated civil contempt proceedings for untimely child support payments. *Id.* at 2. The *Parker* Court held that the *Younger* abstention doctrine applied because the injunctive relief sought would interfere with state judicial contempt proceedings. *J.P.*, 653 F.2d at 1083 (citing *Parker*, 626 F.2d at 10). Again, the injunctive relief Plaintiff Children seek here is directed to Michigan's executive branch, not its courts. Accordingly, such relief, if granted, will not require ongoing federal court oversight or interference with the daily operations of Michigan's juvenile courts.

Finally, Defendants' reliance on the Tenth Circuit's decision in *J.B. v. Valdez*, 186 F.3d 1280 (10th Cir. 1999), is also misplaced. There, a putative class of developmentally disabled children filed a lawsuit against various New Mexico state agency officials

14

employed by three separate state agencies. The district court denied class certification and dismissed the individual named plaintiffs' lawsuit on *Younger* abstention grounds. *Id.* at 1283. The Tenth Circuit Court of Appeals affirmed the denial of class certification, dismissed a number of the individual named plaintiffs' claims as moot, and then held that as to the remaining three individual plaintiffs, the *Younger* abstention doctrine was properly invoked because those three plaintiffs' lawsuit was likely to interfere with their ongoing proceedings in New Mexico's Children's Court. In contract, this case has been certified as a class action, raises § 1983 challenges as to executive branch conduct, and seeks prospective equitable relief on a systemic and class-wide basis against a solitary executive branch agency. Thus, unlike the circumstances presented in *J.B.*, any prospective injunctive relief granted by this Court will not threaten interference with any particular Plaintiff's ongoing juvenile court proceedings or existing juvenile court procedures.

### 2. *Burford* Abstention Doctrine

Defendants also ask this Court to abstain from exercising its jurisdiction by invoking the abstention doctrine set out in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). This Court declines to do so as the *Burford* abstention doctrine is properly invoked in two narrow circumstances, neither of which is present here.

First, the *Burford* abstention doctrine is invoked in cases that present "difficult questions of state law bearing on policy problems of a substantial public import whose importance transcends the result of the case at bar." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976). Here, Plaintiff Children's complaint raises questions of federal, not state law.

Second, *Burford* abstention is applied in cases where the "exercise of federal review

15

of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," *id.*, and the federal court's decision on the legal issue is likely to "interfere with the proceedings or orders of state administrative agencies." *Rouse v. DaimlerChrysler Corp. UAW*, 300 F.3d 711, 716 (6th Cir. 2002) (citing *NOPSI*, 491 U.S. at 361). Plaintiff Children's case questions whether Defendants are complying with federal law and seeks prospective injunctive relief. As discussed above, it does not interfere with a state administrative agencies' proceedings or orders. Plaintiff Children's case will not disrupt the state's efforts to create a uniform policy governing children in its foster care system. Rather, it will serve to achieve those efforts in a way that complies with constitutional and federal law. *See Habich v. City of Dearborn*, 331 F.3d 524, 534 (6th Cir. 2003) (declining to invoke the *Burford* doctrine of abstention to dismiss the plaintiff's § 1983 claims alleging that the defendant city violated the Fourteenth Amendment's equal protection clause by refusing to sell her land adjacent to her property and violated her due process rights when it padlocked her home without providing her with a hearing).

## IV.  Conclusion

For the above-stated reasons, Defendants' motion to dismiss is DENIED.


       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated:  April 17, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or

counsel of record on April 17, 2007, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager