UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DWAYNE B., by his next friend, John Stempfle;
CARMELA B., by her next friend, William Ladd;
LISA J., by her next friend, Teresa Kibby; and          No. 2:06-cv-13548
JULIA, SIMON, and COURTNEY G., by their
next friend, William Ladd; for themselves and          Hon. Nancy G. Edmunds
others similarly situated,

        Plaintiffs,

v

JENNIFER GRANHOLM, in her official
capacity as Governor of the State of
Michigan, MARIANNE UDOW, in her
official capacity as Director of the Michigan
Department of Human Services ("DHS");
LAURA CHAMPAGNE, in her official
capacity as Chief Deputy Director of DHS
Operations; and JAMES HENNESSEY, in
his official capacity as Deputy Director of
DHS Children's Services,

        Defendants.

_____/

Attorneys for Plaintiffs
Marcia Robinson Lowry (Bar No. 1187053)          William R. Morris (P31957)
Susan Lambiase (Bar No. 2099489)                 Attorney for Defendants
Sara Michael Bartosz (Bar No. 6194058)           Michigan Department of Attorney
Elissa Hendler (Bar No. 42695669)                General
Gena E. Wiltsek                                  Education & Social Services Division
Children's Rights                                P.O. Box 30758
330 Seventh Avenue, Fourth Floor                 Lansing, MI  48909
New York, New York  10001                        Phone:  (517) 373-7700
Phone:  (212) 683-2210

Samuel C. Damren (P25522)
Heidi Naasko (P58783)
Dykema Gossett PLLC
400 Renaissance Center
Detroit, Michigan  48243
Phone:  (313) 568-6800

_____

## ANSWER AND AFFIRMATIVE DEFENSES

Defendants answer the Class Action Complaint filed in this matter as follows:

1.      Defendants deny that they, "by their actions and inactions," have harmed or continue to harm vulnerable children who rely on the State for care and protection.  Because the remainder of the allegation summarizes Plaintiffs' litigation, no additional response is denied.  Defendants deny that Plaintiffs are entitled to relief.

2.      Denied, as stated.  Defendants do not have "custody" of approximately 2000 children who are placed in-home.  In addition, Michigan's juvenile courts retain jurisdiction and primary responsibility for many children in the foster care system.  Finally, when looking at the number of children in out-of-home care per 1,000 children in the population, Michigan ranks 35th (not 7th) out of 51 states (50 states + D.C.) at 8.4 children per 1,000.  Plaintiffs' second two sentences are denied.

3.      Denied, including subparagraphs a-d.  In further response, the U.S. Department of Health and Human Services (HHS) established a Child and Family Service Review (CFSR) national standard of .57 percent of the incidence of child abuse and/or neglect in foster care.  Michigan's performance as of May 2006 was 0.19 percent.  Michigan's performance is thus substantially better than the national standard; HHS cited this as a strength of the Michigan system in the initial CFSR review.

4.      Denied, including subparagraphs a-f.  In further response, Defendants state that Michigan's performance is better than the national CFSR standard on three key measures:

- Reoccurrence of Maltreatment: Michigan - 4.58 percent, national standard 6.1 percent.
- Incidence of Child Abuse and/or Neglect in Foster Care is better than the national CFSR standard: Michigan - 0.19 percent, national standard 0.57 percent.
- Foster Care Re-entries with 12 months: Michigan - 2.54 percent, national standard 8.6 percent.

These data demonstrate that, once abuse and/or neglect is identified and services provided, there is a substantial reduction in risk to the child.

5.      Admitted that the Auditor General issued the identified report, but denied that it was accurate at the time or since.

6.      The first sentence is denied.  The second two sentences offer accurate quotes, but both quotes are taken out of context.  In particular, Justice Corrigan addressed foster care from a national perspective, in connection to her service on a national work group organized by the Pew Commission.

7.      Denied.

8.      The first sentence is denied.   Subparagraphs a-d may accurately summarize the cited news stories, but do not present a balanced view of the relevant facts.  The final two sentences are denied.

9.      Denied.  For four of the past six years, Michigan met or exceeded the national standard (32%) for the percentage of children who exited care to a finalized adoption in fewer than 24 months from their latest removal from home.

10.      Denied, as stated.  These sentences describe children who have been abused or neglected in any state.

11.      Denied.

## JURISDICTION AND VENUE

12.      Denied.

13.      If the Court has jurisdiction, it is one of two Michigan districts having venue.

## PARTIES

### Named Plaintiffs

**Dwayne B.**

14.      Admitted that Dwayne B came into care in January 2001.  Denied that he was separated from his brother upon removal.  As to the balance of the paragraph, Defendants are

2

without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

15.    Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

16.    The first sentence is admitted.  The second sentence is denied.

17.    The first sentence is admitted.  As to the second and third sentences, Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.  Defendants further note that concurrent planning is not required under law, and is not currently part of Michigan's approved State Plan.

18.    Denied, as stated.  Pursuant to the Juvenile Court's ongoing supervision, Dwayne was reunited with his biological mother on May 28, 2004, and removed three days later.

19.    Denied, as stated.  The contract agency filed the petition to terminate Dwayne's mother's rights in June 2004.  The Juvenile Court did not give DHS permanent custody until 15 months later.

20.    Admitted that Dwayne was thus placed.  Denied that he brought complaints to the Department's attention, or that the foster mother's daughter's alleged criminal history was brought to its attention.

21.    Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

22.    With regard to the first two sentences, Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.  As to the third sentence, Defendants admit that Dwayne is on psychotropic medications prescribed by a doctor or doctors, but denied that the physicians were "DHS-provided."  As to the final sentence, Defendants admit that he weighed about 40 pounds as of the date of the Complaint, but as to his present status and the balance of the allegation, Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

23.     Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

24.     Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.  DHS arranged evaluations for Dwayne in February and March 2007.

25.     Denied.

**Carmela B.**

26.     Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

27.     Admitted, with the clarification that she was removed August 29, 1991.

28.     Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

29.     Admitted.

30.     Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

31.     Admitted, but for the pejorative suggestion that placements made under Juvenile Court supervision can be described as "cycled."

32.     Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

33.     Admitted.

34.     The first sentence is admitted.  On September 2, 2004, a case conference occurred involving the placing agency, L-GAL William Ladd, and others.  The group reached the conclusion that Carmela had reached maximum benefit from the Bridges program, and that it was time for her to work on additional emotional issues, in the Grace program.  To the extent that the allegation varies from this, Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

35.     Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.  Supervision at Grace was through care workers, not "guards."

36.     Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

37.     Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.  Carmela attended a public school in Dearborn Heights.

38.     Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

39.     Admitted that Carmela resides in a group home, but denied that her behavior "continues to deteriorate."

40.     Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.  Defendants further state that Carmela is attending classes to help prepare her for life as an adult.

41.     Denied.

**Lisa J.**

42.     The first three sentences are admitted.  As to the final sentence, Defendants are without knowledge or information on which to base a response, and leave Plaintiffs to their proofs.

43.     Admitted that DHS filed its petition based on some of the grounds identified in the allegation.  To the extent that Plaintiffs' allegations vary from the Petition, as approved by the Juvenile Court, those allegations are denied.

44.     Admitted.

45.     The first three sentences are admitted.  The final sentence is denied.

46.     Denied, as stated.  The supervising Juvenile Court determined that the father had progressed significantly, warranting a renewed effort at reuniting her with him.

47.     Denied.  Defendants further state that Lisa received extensive ongoing counseling by several mental health providers.

48.     Denied.  Defendants further state that the Juvenile Court continued to conduct quarterly review hearings, monitoring the information known at the time; when the sexual activity was reported in October 2005, the Department assured that Lisa's sibling visits were discontinued.

49.     Denied.  Defendants further state that Lisa received extensive ongoing counseling by several mental health providers; the records show that she attempted to run away only once.

50.     Denied.  Defendants further state that the Juvenile Court continued to conduct quarterly review hearings, monitoring the information known at the time.

51.     Denied.  Defendants further state that residential treatment was authorized for Lisa when it became appropriate.

52.     Denied.  Defendants provided a range of mental health and other services, and reviewed her situation quarterly with the supervising Juvenile Court.

53.     Denied.  The file shows that the supervising Juvenile Court concluded that Lisa's father had in fact benefited from services provided, to the extent that reunification remained a goal until March 2006, when it proceeded on a second petition to terminate his rights.

54.     Denied.

55.     Denied.

**Julia, Simon and Courtney G.**

56.     Admitted that children have been in care for more than three years, were victims of neglect or abuse and have significant needs.  But Defendants deny that the children have been denied access to treatment and deny that DHS has not taken steps to achieve stable and permanent placements.  Admit that the children are still temporary court wards, but DHS is pursuing permanent wardship for Simon with a plan for him to be adopted by his current foster parents.  The siblings have indicated that they are not interested in becoming permanent wards; this is due primarily to their age.

57.     Admitted.

58.     Defendants deny that DHS subjected the children to dangerous and inappropriate foster placements.  Admitted that the children have been in multiple placements and have not all been placed together due to the special needs of the children.  Simon is autistic; Julia is diagnosed emotionally impaired, ADHD, Depressive Disorder, and has a learning disorder; Courtney is developmentally delayed.  Defendants deny that visitation among siblings did not occur for more than their first two years in care.

59.     Defendants admit that Julia had multiple placements and a history of multiple truancies and that Julia was placed in the Juvenile Detention Facility after being apprehended while AWOL from placement as per Wayne County Court policy in effect at the time.  Deny that DHS physically restrained Julia.  Admit that Julia had a number of shelter placements while attempts were made to assess her needs and locate a placement that would meet her needs.

60.     Defendants admit that Julia experienced multiple shelter placements and truancies.  Admit that during truancies, Julia may have resided with her mother and may have been exposed to alcohol and illegal drugs. Admit that Julia remained in shelter placements beyond thirty days due to the absence of a suitable placement that would meet her needs.  Deny that DHS used physical restraints, including handcuffs, on her.

61.      Defendants admit that Julia was placed in a therapeutic foster home. Admit that allegations were made against the foster parent, but to DHS's knowledge the allegations were not substantiated.  Defendants admit that Julia was removed due to the allegations and replaced in another foster home that was considered as a "respite" home and that she was replaced to a second foster home.

62.     Admitted with a clarification. DHS does not admit to inadequate care and permanent planning for nearly three years. Also, denied that DHS engaged in an argument or was inappropriate in front of the child.  Denied that DHS has refused to place Julia in a residential setting; she is currently in congregate care.

63.     Admitted with a clarification.  DHS denies any knowledge of Simon being abused while in shelter care.

64.     Denied.  Simon is not currently placed in an adult foster home.

65.     Denied.  Foster parent has expressed an interest in adopting Simon.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

## Next Friends

70.     No contest, but Defendants deny that the putative Next Friend is empowered to act as such.

71.     No contest, but Defendants deny that the putative Next Friend is empowered to act as such.

72.     No contest, but Defendants deny that the putative Next Friend is empowered to act as such.

73.     No contest, but Defendants deny that the putative Next Friend is empowered to act as such.

## Defendants

74.     Admitted.

75.     Admitted.

76.     Admitted.

77.     Admitted.

## Class Action Allegations

78.     Denied.

79.     Denied.  In addition, by definition, a child placed in his or her own home is not in state custody.

80.     Denied.

81.     Denied.  Each child relies on a network that includes his or her parents, foster parents, attorneys and the juvenile court(s) that exercise jurisdiction over him or her, in addition to Defendants.

82.     Denied, including subparagraphs a-d.

83.     Denied, including subparagraphs a-e.

84.     Denied.

85.     Denied.

86.     Denied.

87.     The first sentence is admitted.  The second sentence is denied.

88.     Denied.

## FACTUAL ALLEGATIONS REGARDING SYSTEMIC DEFICIENCIES IN THE CHILD WELFARE SYSTEM THAT HARM CHILDREN

Defendants deny the allegation inserted before numbered paragraph 89.

89.     Admitted.

90.     Admitted as an outline of the process.

91.     Denied.

92.     Denied.  Current statistics show that Michigan's PIP Placement Stability Goal is 86% and it is at 85.8%.  Michigan's Reunification within 12-months goal is 42.9% and it is at 38.9%.  Michigan continues to improve in these areas.

93.     Denied.  It is misleading to describe a 2003-2004 report as "recent" in August 2006.

94-95.  Denied.  Plaintiffs mislead in their suggestion that "systemic reform" is something that: (a) could be effectively accomplished in two or three years; or (b) can be achieved solely by Defendants.

Defendants deny the allegation made before numbered paragraph 96.

96.     Admitted.

97.     Denied, including subparagraphs a-d.

98.     Denied.

Defendants deny the allegation made before numbered paragraph 99.

99.     Admitted, with the amendment that "caseworkers" are not "vehicles," and that they are only one resource by which foster children can secure services and permanency.

100.    Denied.

101.    Admitted that the Child Welfare League of America sets such standards but denied that those standards are "generally accepted."

102.    Admitted.

103.    Admitted.  As a point of clarification, DHS assigned these individuals to be facilitators in its "Family to Family" initiative, whose goal is to increase positive outcomes for children through "team decision-making" and increased community involvement.

104.    Defendants admit that the cited Board adopted a resolution that includes the statements quoted.  Defendants admit that the resolution was transmitted to Governor Granholm and Director Udow, but deny that it is relevant to any issue before the Court.  With respect to the final sentence of the allegation, Defendants are without knowledge or information on which to base a response as to the composition of the MCSSA, and likewise have no knowledge or information as to whether any of the "DHS board members... DHS directors, district managers and supervisors from all 83 counties in Michigan" voted for the resolution, and therefore leave Plaintiffs to their proofs.

105.    Admitted that Executive Budget request for FY 2007 did not contain additional foster care or adoption staff, but with explanation that Director Udow supported internal staffing

adjustments to increase children's protective services staff by 64 positions or 8.6%. Prior staffing increases in foster care decreased caseload ratios from 32:1 in 1999 to 20:1 in FY 2007.

106.    The first two sentences are denied. As to the final sentence, Defendants acknowledge that Plaintiffs have accurately quoted the cited material, but deny the statements in that quote.

107.    Defendants admit that the February 2006 publication was correctly quoted, but deny the accuracy of the statements and opinions contained in the quote.

108.    Defendants are without knowledge or information on which to base a response and therefore leave Plaintiffs to their proofs.

109.    The first sentence is admitted. The second sentence is denied, as stated.

110.    Admitted, at that time. As of August 2006, there were 725 foster care workers.

111.    The first sentence is admitted. The second sentence is admitted with the correction that 30 is not "almost three times" 12. The balance of the allegation is denied.

112.    The first sentence is admitted, except the judgment expressed in the phrase "and inappropriately high" is denied. The second and third sentences are denied.

113.    Denied.

114.    Denied.

115.    Admitted that the material was correctly quoted, but as to the accuracy of the quoted statements, Defendants are without knowledge or information on which to base a response and therefore leave Plaintiffs to their proofs.

116.    Denied.

117.    Denied.

Plaintiffs deny the allegation made before numbered paragraph number 118.

118.     Admitted as a general statement.

119.     Defendants admit that its policies, including the Foster Care Manual, generally identify the requirements identified.  More fully and accurately: In the first month of placement workers must make two phone contacts with the child in addition to the home visits.  In the first month after removal, workers must make two face-to-face contacts with the parent(s) and two phone contacts if the parent(s) has a phone.  In subsequent months, face-to-face contact must be made monthly, and at least once every three months, the visit has to be in the parent's place of residence.  Phone contact should be made as needed.  Defendants are without knowledge on which to base a response whether the phrase "standard social work practice" corresponds to these policies, or makes the same requirements, and therefore leave Plaintiffs to their proofs.

120.     Denied, as stated.  Michigan's federal target for improved performance in worker visits with children is 75.7%.  Michigan is currently at 68.57%.  Michigan has a non-overlapping year to achieve its federal target.

121.     Defendants are without knowledge or information on which to base a response to the allegations, and therefore leave Plaintiffs to their proofs.

Defendants admit the allegation made before paragraph number 122, with court approval.

122.     The first two sentences are admitted.  As to the third sentence, Defendants are without knowledge or information on which to base a response to the allegations, and therefore leave Plaintiffs to their proofs.

123.     Denied.

124.     Denied.  Relatives are advised that, even without licensure, they may be eligible for benefits under the Family Independence Program ($157/mo).  The children in care remain eligible for Medicaid.

125.    Admitted that the 2002 CFSR drew such a conclusion, but as to the accuracy of its conclusion, Defendants are without knowledge or information on which to base a response to the allegations, and therefore leave Plaintiffs to their proofs.

126.    The first sentence is admitted, in part.  As a point of clarification, OCAL is only part of DHS – and DHS is only one branch of State government – that is expected to "assure the safety of all foster children."  The second and third sentences are denied.

127.    Denied.  Caseworker support services and visit requirements pursuant to policy are the same for relatives as for licensed foster parents.  Other services are available to children in relative care based on the child's needs.  Relatives are also eligible for other supportive services necessary to support the continuation of the placement.

128.    Denied.  It should be noted that in the OAG Foster Care audit where there was a finding of 321 foster care providers with potentially disqualifying convictions, the following factual data were provided to refute its findings:

- 1 case was an audit error, incorrect SSN.
- 201 providers were a legal parent.
- 107 of the convictions were non-disqualifying for placement
- 94 had convictions for violent crimes where it was determined that the risk level was minimal.
- 119 were with other relatives.
- 89 are other relatives with convictions for non-violent crimes.
- 10 never had children placed with them.
- 4 had court orders placing the child, not in agreement with the DHS recommendation.
- 9 were reviewed and the determinations was made that there was minimal risk.
- 7 had convictions after the placement.

Defendants deny the allegation inserted before numbered paragraph 129.

129-130.    Denied.  Wayne County DHS implemented the Child Placement Network (CPN) in 2006.  Matching children's needs to the appropriate placement, relative or licensed

foster home, occurs prior to placement.  In 2005, the Child Assessment of Needs and Strengths (CANS) tool was modified to become Age-Appropriate.  One tool was broken into four separate tools that were targeted to identify issues for children based on age-appropriate norms.  These revisions allow identification of concerns more appropriately thereby permitting a better foster or relative placement with a better identification of child need issues.

131.    Denied, as stated.  Plaintiffs fail to take into account licensure by private agencies, and fail to take into account the other initiatives and services that reduce the need for such homes.

132.    Denied.

133.    Admitted that the 2002 CFSR drew such a conclusion, but denied that that conclusion was or is accurate.

Defendants deny the allegation inserted before numbered paragraph 134.

134.    Denied.

135.    Admitted.

136.    Denied.

137.    Denied.

Defendants deny the allegation inserted before numbered paragraph 138.

138.    Denied, as a misstatement of the federal law.

139.    Denied.

140.    Denied.  In addition, Plaintiffs misrepresent the purpose and nature of the United States Department of Agriculture findings.  Michigan's reimbursement is greater than the average monthly foster care payment for a 9-year-old child is $420.  Children's Voice, CWLA Dec. 2005.

141.    The first sentence is admitted, with the amendment that the phrase is "difficulty of care" or "DOC."  The second sentence is denied.

142.    Denied.  The DOC is based on the activities the foster parent must do to support the child.  Workers, when a placement move occurs, work with the new foster parent to determine the appropriate level of DOC.  This re-evaluation may either increase or decrease the level of DOC that is appropriate for the family to receive.

Defendants deny the statement inserted before numbered paragraph 143.

143.    Admitted as a general statement, but denied that it applies to any Plaintiff.

144.    The first two sentences are denied.  With respect to the third sentence, Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.  Defendants further state that Michigan's most recent AFCARS data reveal that 85.8% of the children in foster care for 12 months or less (Measure C4-1) had two or fewer placements; 70.5% of children in care for 12-24 months (Measure C4-2) had two or fewer placements and 41.9% of children in care for 24+ months (Measure C4-3) had two or fewer placement settings.  Michigan's composite score of 103.3 is thus above the National Standard of 101.5.

145.    Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

146.    Admitted that the 2002 report drew the conclusions identified, but denied that Plaintiffs adequately summarized those conclusions.  In addition, since that time, Michigan's performance is at the national standard of 86 percent for children in foster care with fewer than two moves. Wayne County, the State's founding Family-to-Family site, has reduced the percentage of children with three or more placements from 48 percent in 2001 to 25 percent in

2005.  The initiative has also increased placement stability: The percentage of children with only one placement increased in from 21 percent in 2001 to 40 percent in 2005.  The percentage of children with only two placements increased from 31 percent in 2001 to 35 percent in 2005. Family-to-Family is being rolled out to the rest of the state.

147.    Denied.

Defendants deny the statement inserted before numbered paragraph 148.

148.    Admitted.

149.    Admitted.

150.    Denied.

Defendants deny the statement inserted before numbered paragraph 151.

151.    Admitted.

152.    The first sentence is admitted.  As to the balance of the allegation, Defendants are without knowledge or information on which to base a response to the allegations, and therefore leave Plaintiffs to their proofs.

153.    Admitted that the FCRB made these statements, but denied that they were or are accurate.

154.    Denied.  Plaintiffs overlook the existence of other initiatives and services that allowed these reductions to occur.

155.    Denied.

156.    Defendants are without knowledge or information on which to base a response to the allegations, and therefore leave Plaintiffs to their proofs.

157.    The first sentence is denied.  As to the balance of the paragraph, Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

158.    Denied.

Defendants deny the allegation inserted before numbered paragraph 159.

159.    Admitted.

160.    The first sentence is admitted.  The balance of the allegation is denied.

161.    Defendants are without knowledge or information on which to base a response, and therefore leave Plaintiffs to their proofs.

162.    The first sentence is admitted.  As to the balance, Defendants are without knowledge or information on which to base a response to the allegations, and therefore leave Plaintiffs to their proofs.

163.    Defendants admit that the work group issued a report from which the quoted language was drawn, but denied that the group identified any "critical failures in Michigan's provision of adoption and permanency services."

164.    Denied.  The cited Act conditions Title IV-E funding on compliance with the Act and its regulations.  Denied that the cited Act requires "concurrent planning."  The final sentence is also denied.

165.    Admitted that Defendants work with the other interested parties to determine a permanency plan for each child in care, but such permanency plan may not be adoption.  There are two projects in place to address the issues of when a goal of other than adoption is appropriate, which are summarized here:

•       Develop and implement a statewide Permanency Passport that will record and track the status of the case from termination to finalization/closure date.

Regions and counties monitor children who have an identified goal of adoption using a variety of similar tools.  The purpose of a statewide tool is to provide consistency of data reporting, monitoring and evaluation.  The tool, in addition to highlighting timeframes, will also identify current barriers that will assist state level resource planning and allocation.  This will be completed within 30 days.

•       The Statewide Oversight Committee on Adoption will develop criteria for defining appropriate goals for state wards.  The Oversight Committee will review cases that do not follow guidelines.

To the extent that Plaintiffs' allegation goes beyond this admission, it is denied.

166.    The first sentence is denied.  The second sentence is admitted.  The remainder of the allegation is denied.

167.    Denied, as stated.  A child may not be listed on MARE for a number of reasons, including the child's safety, a judge's order or if a possible adoptive placement has been located.

Defendants deny the allegation inserted before numbered paragraph 168.

168.    Denied, as stated.

169.    Admitted, but for the allegation that Defendants "provide" the services, which is denied.

170.    Admitted that the 2002 CFSR made such findings.  But because Defendants implemented a Program Improvement Plan ["PIP"], they have since met the federal agency's concerns in this area.

171.    Admitted that the 2005 FCRB Annual Report included the findings and recommendations quoted, but denied that the findings are accurate.

172.    Denied.

173.    Denied.

174.    Denied.

175. Defendants are without knowledge or information on which to base a response and therefore leave Plaintiffs to their proofs.

176. As to the first sentence, Defendants are without knowledge or information on which to base a response and therefore leave Plaintiffs to their proofs.  The second sentence is denied.

177. Defendants are without knowledge or information on which to base a response and therefore leave Plaintiffs to their proofs.

178. Defendants are without knowledge or information on which to base a response and therefore leave Plaintiffs to their proofs.

179. The first sentence is denied.  As to the balance of the paragraph, Defendants are without knowledge or information on which to base a response and therefore leave Plaintiffs to their proofs.

180. Denied.  Defendants note that Medicaid identification does not need to be in the form of a card; providers can verify coverage on line:

http://www.michigan.gov/mdch/0,1607,7-132-2945_5100-57088--,00.html

181. Denied.

Defendants deny the allegation inserted before numbered paragraph 182.

182. Admitted.

183. Admitted that the 2002 CFSR made such findings.  But because Defendants implemented a PIP, they have since met the federal agency's concerns in this area.  Any statement to the contrary is denied.  As to the final sentence, Defendants are without knowledge or information on which to base a response to the allegations, and therefore leave Plaintiffs to their proofs.

184.    Defendants are without knowledge or information on which to base a response and therefore leave Plaintiffs to their proofs.

185.    Denied.

186.    Denied.

Defendants deny the allegation inserted before numbered paragraph 187.

187.    Defendants are without knowledge or information on which to base a response and therefore leave Plaintiffs to their proofs.

188.    Admitted that Professor Gary Anderson published such a report, but denied that his conclusions are accurate.

189.    Admitted that Professor Gary Anderson published such a report, but denied that his conclusions are accurate.

190.    Admitted that Michigan returned Chafee funds available to it in 2004, so that the money could be used for transitioning youth nationwide.  Plaintiffs' explanation of the reason is denied.  Thereafter, as seen in response to paragraph 191, Michigan has drawn all such funds.

191.    Denied.  Michigan is currently drawing down its entire federal ETV ["Educational and Training Voucher"] award.  Michigan is committed to increase the number of individual ETV awards given each year to foster care youth.  In FY05, Michigan increased the number of awards to youth by 78%.  In FY06, Michigan continued to increase the percentage of ETV awards granted by 54% of FY05.  In January 2006, Michigan contracted with Lutheran Social Services of Michigan to administer the ETV.

192.    The first two sentences are admitted.  Although Director Udow created a task force to work on the issue, the balance of the paragraph is denied.

193.    Defendants are without knowledge or information on which to base a response and therefore leave Plaintiffs to their proofs.

Defendants deny the allegation inserted before numbered paragraph 194.

194.    Admitted.

195.    Admitted, with the explanation that most of the findings of non-compliance resulted from judicial officers' making required findings without documenting them in accordance with HHS's expectations.  None of the findings criticized DHS in its services to children.

196.    The first sentence is admitted.  Addressing the second sentence, DHS admits that it implemented the Title IV-E PIP and audited many of its Title IV-E foster care case files, but it denies that Defendants "disclosed that the state may be required to return another $40 million to the federal government due to erroneous eligibility determinations."

197.    Defendants are without knowledge or information on which to base a response to the allegations, and therefore leave Plaintiffs to their proofs.

198.    The first sentence is admitted.  While Defendants agree that the auditor drew these conclusions, they denied and deny the accuracy of those conclusions.

199.    Denied, as stated.  The Audit findings for Adoption were based a coding issue for funding.  The costs were appropriate but had been coded to the Foster Care Program instead of the Adoption Program and this error was corrected.

200.    Defendants are without knowledge or information on which to base a response to the allegations, and therefore leave Plaintiffs to their proofs.

201.    Because Plaintiffs do not identify the source of their first proclamation regarding "[a]n appropriately managed child welfare system in the United States," Defendants are without

knowledge or information on which to base a response and therefore leave Plaintiffs to their

proofs.  The second and third sentences are denied.  Contrary to Plaintiffs' misstatement, DHS

Title IV-E penetration for recent years is:

> 2002 just Foster Care: 68.0154% end of year average
> 2002 total (FC, delinquency, & adoption): 75.4650% end of year average
>
> 2003 just foster care: 65.2014% end of year average
> 2003 total: 74.5894% end of year average.
>
> 2004 just foster care: 60.7435% end of year average
> 2004 total: 72.3702% end of year average
>
> 2005 just foster care: 57.6966% end of year average
> 2005 total: 72.1157% end of year average

Defendants deny the allegation inserted before numbered paragraph 202.

202.    Defendants are without knowledge or information on which to base a response

and therefore leave Plaintiffs to their proofs.

203.    Denied.

204.    Defendants are without knowledge or information on which to base a response

and therefore leave Plaintiffs to their proofs.

Defendants deny the allegation inserted before numbered paragraph 205.

205.    Admitted.  Defendants do not fund L-GALs, the local courts do.

206.    Defendants are without knowledge or information on which to base a response

and therefore leave Plaintiffs to their proofs.

207.    Defendants are without knowledge or information on which to base a response

and therefore leave Plaintiffs to their proofs.

208.    Admitted that the FCRB issued such a report, but denied that its findings and

recommendations are accurate.

## COUNT I

209.    Defendants' responses to the allegations in the complaint are incorporated as if fully set forth here.

210.    Denied.

211.    Denied.

212.    Denied.

213.    Denied.

## COUNT II

214.    Defendants' responses to the allegations in the complaint are incorporated as if fully set forth here.

215.    Denied.

## COUNT III

216.    Defendants' responses to the allegations in the complaint are incorporated as if fully set forth here.

217.    Denied.

## COUNT IV

218.    Defendants' responses to the allegations in the complaint are incorporated as if fully set forth here.

219.    Denied.

220.    Denied.

221.    Denied, including subparagraphs a-e.

## COUNT V

222.    Defendants' responses to the allegations in the complaint are incorporated as if fully set forth here.

223.    Admitted.

224.    Denied.

225.    Denied.

## AFFIRMATIVE DEFENSES

1.    Plaintiffs lack standing to assert some or all of their claims.

2.    Congress did not create a right of action on behalf of Plaintiffs.

3.    The US Department of Health & Human Services' April 2007 finding of compliance with Title IV-E estops Plaintiffs from asserting a violation of that statute.

4.    The US Department of Health & Human Services has primary jurisdiction over claims that a state has violated Title IV-E.  The Court should therefore not exercise jurisdiction.

5.    Because Plaintiffs claims are predicated on their alleged individual rights, each claimed violation of such rights can and should be resolved in the juvenile court having jurisdiction over such child.

6.    Plaintiffs have not stated a claim for which relief can be granted.

7.    The Court should exercise its discretion to abstain from adjudicating these claims.

8.    Defendants reserve the right to add to or amend these defenses during the course of discovery.

WHEREFORE, Defendants ask the Court to dismiss this Complaint with prejudice, and to award them their reasonable costs incurred in its defense.

Respectfully submitted,

Michael A. Cox
Attorney General

s/William R. Morris
Assistant Attorney General
525 W. Ottawa, Rm. 338
Lansing, MI  48933
Phone: (517) 373-7700
Primary E-mail: Morriswr@michigan.gov
P31957

Dated:  April 30, 2007
2006018462A/answer

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2007, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to the

following: Samuel Damren and Heidi Naasko, and I hereby certify that I have mailed by United

States Postal Service the paper to the following non-ECF participants: Children's Rights, Inc.,

330 Seventh Avenue, Fourth Floor, New York, NY 10001.

Respectfully submitted,

Michael A. Cox
Attorney General

s/William R. Morris
Assistant Attorney General
525 W. Ottawa, Rm. 338
Lansing, MI  48933
Phone: (517) 373-7700
Primary E-mail: Morriswr@michigan.gov
P31957

Dated:  April 30, 2007