# EXHIBIT D

to

# DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL AND FOR ENTRY OF CONFIDENTIALITY ORDER

Case No. 2:06-CV-13548

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

DWAYNE B., by his next friend, John Stempfle;
CARMELA B., by her next friend, William Ladd;
LISA J., by her next friend, Teresa Kibby; and
JULIA, SIMON and COURTNEY G., by their next
Friend, William Ladd; for themselves and others
similarly situated,
    Plaintiffs,

v.

JENNIFER GRANHOLM, in her official capacity
As Governor of the State of Michigan, MARIANNE
UDOW, in her official capacity as Director of the
Michigan Department of Human Services ("DHS");
LAURA CHAMPAGNE, in her official capacity as
Chief Deputy Director of DHS Operations; and
JAMES HENNESSEY, in his official capacity as
Deputy Director of DHS Children's Services,
    Defendants.
_____/

Case No. 2:06-CV-13548

Hon. Nancy G. Edmunds

Magistrate Judge Donald A. Scheer

**Class Action**

## DECLARATION OF KURT P. McCAMMAN

| **Attorneys for Plaintiffs**: | **Attorneys for Defendants**: |
|---|---|
| Marcia Robinson Lowry | William R. Morris (P31957) |
| Susan Lambiase | Michigan Office of the Attorney General |
| Sara Michael Bartosz | Education & Social Services Division |
| Elissa Hendler | P.O. Box 30758 |
| Gena E. Wiltsek | Lansing, MI 48909 |
| Children's Rights | (517) 373-7700 |
| 330 Seventh Avenue, Fourth Floor | |
| New York, NY 10001 | B. Jay Yelton, III (P43691) |
| (212) 683-2210 | P. Rivka Schochet (P52921) |
| | Dari Craven Bargy (P65166) |
| Samuel Damren (P25522) | Kurt P. McCamman (P51477) |
| Heidi Naasko (P58783) | Brad H. Sysol (P58138) |
| Dykema Gossett PLLC | Miller, Canfield, Paddock and Stone, P.L.C. |
| 400 Renaissance Center | 444 West Michigan Avenue |
| Detroit, MI 48243 | Kalamazoo, MI 49007 |
| (313) 568-6800 | (269) 381-7030 |

I, Kurt P. McCamman, declare:

1.  I make this Declaration on the basis of my personal knowledge. If sworn as a witness, I can testify to the following facts which are true.

2.  On July 3, 2007, I attended the deposition of James Nye which was taken by Plaintiffs' attorney, Sara Bartosz. Also in attendance were Plaintiffs' counsel, Gena Wiltsek and Krista Lenart. Prior to beginning the deposition, Attorney Bartosz asked that I arrange a telephone conference with Attorney Yelton to discuss finalization of the draft Protective Order. I left a message for Attorney Yelton and he returned the call while I was in deposition and my phone was muted. After a series of exchanged calls, we were able to conduct a telephone conference with Attorney Yelton, Attorney Bargy, myself, and with Plaintiffs' counsel. Lengthy discussions were had via telephone conference, and counsel went back and forth with ideas on how to revise the draft Protective Order to make it acceptable to all.

Late in the negotiations, Attorney Bartosz referenced testimony that had been given by Mr. Nye during his deposition concerning DHS Form CF22-5, which detailed the parts of a case record. Attorney Bartosz argued that many of these records were discoverable because they represented the class Plaintiffs and they were relevant to the allegations in the Complaint. After listening to Attorney Bartosz's argument, I asked the three Plaintiffs' counsel to leave the conference room, and I had a private conversation with Attorney Yelton and Attorney Bargy. We agreed that we could list case records by category in the Protective Order and ask the Court to enter an order making a finding of stipulated need to enable the Defendant to release records without

2

violating Michigan law. I then asked Plaintiffs' counsel to come back into the conference room and told them we had agreed to Attorney Bartosz's proposal to list categories of documents that could be released. As part of this proposal, those records which were not listed by category would be redacted and descriptions placed on a privilege log to allow counsel to further discuss the discoverability of those records and, if an impasse was reached, submit only those documents or portions of documents that were withheld to the Court for review and consideration. Plaintiffs' counsel asked that I leave the room so they could consider the offer.

3. Shortly thereafter Plaintiffs' counsel called me into the conference room and withdrew the proposal they had made. Instead, they suggested that we submit the last version of the Interim Protective Order with a few modifications. I sat down with Plaintiffs' counsel, and we wrote out specific revisions to the last draft of the Interim Protective Order. We went over these changes word for word and even discussed the placement of a comma to make one of the paragraphs read correctly. At no time did Plaintiffs' counsel raise or did we agree to change or remove the language in paragraph 7, "after good faith negotiations . . . ."

4. When we reached final agreement on the language to be changed, it was shortly after 5:00 p.m. on the day before the 4th of July holiday. I told counsel that it was unlikely that we were going to be able to reach our clients for final approval on the changes, and Attorney Bartosz asked that I at least attempt to contact our client for approval. We were able to reach Attorney Luttrell Levingston who agreed to receive the revised draft by e-mail on the 4th of July holiday, review the draft, and then send it to a

person at DHS who had authority to sign the Interim Protective Order upon return to work on Thursday, July 5, 2007. Plaintiffs' counsel agreed to make the revisions to the proposed order and e-mail the revised draft to Miller Canfield. This procedure was agreed upon and I waited at Miller Canfield's Kalamazoo office until 9:10 p.m. on July 3, 2007, when Attorney Wiltsek e-mailed the revised Protective Order for review. I checked the revised order and determined that the revisions to the paragraphs we discussed had been correctly made. Upon closer inspection, however, I discovered that Plaintiffs' counsel had removed the "good faith negotiations" and inserted instead "lengthy negotiations" in paragraph 7. This revision had never been discussed and it was not pointed out in Plaintiffs' counsels' e-mail that additional revisions to the Protective Order had been made by Plaintiffs' counsel.

5. On July 4, 2007, I contacted Attorney Yelton and reported to him that both the authorized revisions and an unauthorized and unagreed to revision had been made. It is my understanding that Attorney Yelton revised the agreement in paragraph 7 to combine the "lengthy negotiations" language with the language that had been there previously concerning the "good faith negotiations" and sent the draft Interim Protective Order to Attorney Levingston for review as had been agreed to between respective counsel.

6. I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

4

Executed this 20th day of July, 2007 at Kalamazoo, Michigan.

BY: _____
Kurt P. McCamman
Miller, Canfield, Paddock and Stone, P.L.C.
444 West Michigan Avenue
Kalamazoo, MI 49007
(269) 381-7030

STATE OF MICHIGAN        )
                         )ss.
COUNTY OF KALAMAZOO      )

Subscribed and sworn to before me on July 20, 2007.

_____
Penny G. Hughes, Notary Public
Kalamazoo County Michigan
My Commission Expires: 5/25/2012

KZLIB:548719.1\060531-00069