**EXHIBIT E**

**to**

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
TO COMPEL AND FOR ENTRY OF
CONFIDENTIALITY ORDER**

**Case No. 2:06-CV-13548**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

DWAYNE B., by his next friend, John Stempfle;
CARMELA B., by her next friend, William Ladd;
LISA J., by her next friend, Teresa Kibby; and
JULIA, SIMON and COURTNEY G., by their next
Friend, William Ladd; for themselves and others
similarly situated,
     Plaintiffs,

v.

JENNIFER GRANHOLM, in her official capacity
As Governor of the State of Michigan, MARIANNE
UDOW, in her official capacity as Director of the
Michigan Department of Human Services ("DHS");
LAURA CHAMPAGNE, in her official capacity as
Chief Deputy Director of DHS Operations; and
JAMES HENNESSEY, in his official capacity as
Deputy Director of DHS Children's Services,
     Defendants.

_____/

Case No. 2:06-CV-13548

Hon. Nancy G. Edmunds

Magistrate Judge Donald
A. Scheer

**Class Action**

## DECLARATION OF B. JAY YELTON, III

**Attorneys for Plaintiffs**:
Marcia Robinson Lowry
Susan Lambiase
Sara Michael Bartosz
Elissa Hendler
Gena E. Wiltsek
Children's Rights
330 Seventh Avenue, Fourth Floor
New York, NY 10001
(212) 683-2210

Samuel Damren (P25522)
Heidi Naasko (P58783)
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243
(313) 568-6800

**Attorneys for Defendants**:
William R. Morris (P31957)
Michigan Office of the Attorney General
Education & Social Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700

B. Jay Yelton, III (P43691)
P. Rivka Schochet (P52921)
Dari Craven Bargy (65166)
Kurt P. McCamman (51477)
Brad H. Sysol (58138)
Miller, Canfield, Paddock and Stone, P.L.C.
444 West Michigan Avenue
Kalamazoo, MI 49007
(269) 381-7030

B. JAY YELTON, III, being duly sworn, deposes and says:

1.      I am an attorney at Miller, Canfield, Paddock and Stone, P.L.C. ("Miller Canfield"), and I am serving as a Special Assistant Attorney General for Defendants in the above-captioned action.  I submit this declaration in opposition of Plaintiffs' Motion to Compel and For Entry of Protective Order.

2.      My appointment as Special Assistant Attorney General for this case became effective as of May 25, 2007.  Miller Canfield entered this case as co-counsel of record for Defendants on June 11, 2007.

3.      My appointment as Special Assistant Attorney General for this case was primarily based on my 15+ years of experience handling discovery intensive cases on behalf of various organizations including but not limited to IBM, Pharmacia & Upjohn, the NCAA, Comerica and Biogen Idec.  More detail about my discovery experience can be found at www.millercanfied.com.

4.      On May 31, 2007, I participated in an initial conference call with attorneys for the Plaintiffs to begin discussing a discovery compliance plan.  For purposes of this initial conference call, based on my recollection, Plaintiffs' attorney Sara M. Bartosz was on vacation and unable to participate.

During this conference call, I recommended that the attorneys for both parties participate in a weekly conference call as a means to expedite the discovery compliance process.  I also explained the steps that we were taking to get ourselves up to speed regarding the case.  I also provided some of my initial thoughts on how Defendants might be able to comply with the outstanding discovery requests.

5.     On June 1, 2007, Plaintiffs' attorney Elissa Gelber, who participated in the May 31, 2007 initial discovery compliance conference call, sent me an email which attempted to summarize "the key points we settled upon."  See email attached hereto at Tab 1.

6.     On June 5, 2007, I sent an email to Plaintiff's attorney Elissa Gelber clarifying/correcting several important items in her summary.   For example, in her summary she stated we agreed to "produce objections and documents in response to Plaintiffs' First Request for Production of Documents by next Wednesday (June 6.)"  In my response, I explained:

> "[P]lease note that we plan to produce responses and objections to your First Request for Production by tomorrow, but we don't plan to produce any documents at this time.  We won't be producing responsive docs until after the protective order has been entered by the Court."

See email attached hereto at Tab 2.

7.     I also pointed out to Plaintiffs' attorney Gelber in my June 5, 2007 email that she likewise overstated our discussion regarding how Defendants were approaching compliance with Plaintiffs' request number 7.  I explained:

> "Under the category of "Pending Discovery Requests," you indicated that we would send you a chart of information we have gathered in response to Request #7.  We want to clarify that we did promise to send you a chart, but we did not indicated that the chart would be complete or even near complete at this stage.  Instead, we promised to send you a sample chart which hopefully can form the basis for an agreed upon process for collecting responsive data to Request #7.  The sample chart is attached hereto and we are prepared to discuss it with you during our next conference call this Thursday."

8.      Later that day, on June 5, 2007, Plaintiffs' attorney Elissa Gelber sent me a follow up email which did not challenge my clarifications/corrections regarding our May 31, 2007 conference call.  See email attached hereto at Tab 2.

9.      Our position that the entry of an adequate Protective Order must occur prior to the production of many if not most documents that are responsive to Plaintiffs' Requests for Production has been consistent.  In fact, throughout this process as we have learned more about Michigan's privacy laws and the types of privacy information contained in the case files being requested by Plaintiffs, the need for such a Protective Order has increased significantly.

10.     Never during these discussions with Plaintiffs' attorneys did I provide firm discovery compliance dates as suggested in Attorney Sara Bartosz's Declaration.

11.     On June 5, 2007, to make progress on agreeing to an adequate Protective Order, I sent an email to Plaintiffs' attorneys requesting that they provide me with a sample of Protective Orders that Plaintiffs' counsel had entered in other states.

12.     The first sample Protective Order that we discussed with Plaintiffs' attorneys was the Protective Order that they agreed to in the State of New Jersey.  I advised Plaintiffs' attorneys that Defendants were in favor of a Protective Order similar to the New Jersey Protective Order.  Plaintiffs' attorneys advised me that they refuse to utilize the New Jersey Protective Order as the framework for a Protective Order in Michigan.

13.     On June 6, 2007, Defendants responded to Plaintiffs' First Request by stating that subject to and without waiving certain objections, Defendants would take

4

reasonable steps to retrieve, review and produce the requested files to Plaintiffs. However, one of Defendants' objections was that the disclosure of highly confidential information not occur "prior to the execution and entry of an adequate confidentiality agreement and protective order." *See* Defendants' Objections and Responses to Plaintiffs' First Request for Production of Documents, page 2, attached as Exhibit B to Defendants' Response to Plaintiffs Motion to Compel and for Entry of Confidentiality Order.

14.     On June 14, 2007, I sent to Plaintiffs' attorneys a proposed Protective Order for this case that was essentially identical to the one they entered into in the Georgia case. See email attached at Tab 3.

15.     On June 15, 2007, Plaintiffs' attorney Bartosz provided me their mark-up of the proposed Protective Order that I had previously provided them.   Plaintiffs' attorneys advised me that they "can not agree to use the general description 'all documents produced by the Department which are confidential under Michigan or Federal law…' in any stipulated order."   Instead, Plaintiffs' attorney Bartosz proposed "that the privacy statutes of interest be specifically identified" in the proposed Protective Order.  See email attached at Tab 4.

16.     I subsequently advised Plaintiffs' attorneys that we preferred the phrase "under Michigan or Federal law" because we were not certain, at this early stage of the discovery process, that we could determine with adequate accuracy exactly what privacy statutes might be relevant.   Nevertheless, we did agree to pursue negotiating Plaintiffs' attorneys' recommended Protective Order format.   However, we advised Plaintiffs'

attorneys that the negotiation of this new Protective Order format would likely delay entry of the Protective Order.

17.     In response to Plaintiffs' attorneys' request for a new Protective Order format specifically identifying the relevant privacy statutes, we conducted legal research and we reviewed the contents of the Defendants' foster care case files that are responsive to Plaintiffs' First Request.

18.     Based on the results of that research and review, on June 26, 2007, I sent an email to Plaintiffs' attorneys stating:

> "[Our] research indicates that there are certain documents that [we are] finding within a case file that we can not produce irrespective of the confidentiality order.  However, I don't want to mislead you by agreeing to a confidentiality order and then not producing certain documents that are protected by the Michigan statutes cited below."

As part of that email, I provided to Plaintiffs' attorneys a summary which identified the relevant statutes and explained our concerns. See email attached at Tab 5.

19.     On June 19, 2007, the parties participated in a meeting with The Children's Research Center to plan for the design and implementation of this project.  The parties are in the process of negotiating the scope and terms of the arrangement with The Children's Research Center to conduct this joint case review during the next two months.  Defendants are also in the process of assembling a team of DHS employees to assist in the planning and implementation of this comprehensive project.

6

20.     On June 20, 2007, Defendants presented James Nye in response to Plaintiffs' Fed.R.Civ.P. 30(b)(6) Deposition Notice to testify regarding staffing, caseloads and training, including the following topics:

- Caseloads of foster care and adoption caseworkers, supervisors, and purchase-of-service ("POS") caseworkers
- Roles and responsibilities of caseworkers and supervisors
- Recruitment, hiring, qualifications and standards for caseworkers and supervisors
- Staffing cutbacks, hiring freezes, FTE reclassifications, or temporary assignments affecting caseloads
- Turnover and vacancy rates
- Pre-service and in-service training for caseworkers and supervisors

21.     On June 21, 2007, Defendants presented James Nye in response to Plaintiffs' Fed.R.Civ.P. 30(b)(6) Deposition Notice to testify regarding recruitment and retention, including the following topics:

- Organizational structure, staffing and responsibilities of units or divisions responsible for recruiting, developing and retaining family foster home placements
- Process used to recruit, develop and retain family foster homes
- Process by which children's placement needs are met
- Number and types of foster homes needed to meet children's needs and the process used to determine that need
- Number and types of foster homes available
- Collection, maintenance, tracking and generation of documentation regarding recruitment, development and availability of placements

22.     On June 22, 2007, Defendants responded to Plaintiffs' Second Request by stating that subject to and without waiving certain objections, Defendants would take reasonable steps to retrieve, review and produce documents responsive to Plaintiffs' requests.  Defendants' response also set forth an explanation of their discovery compliance plan.  *See* Defendants' Objections and Responses to Plaintiffs' Second Request for Production of Documents, page 7, attached as

Exhibit C to Defendants' Response to Plaintiffs' Motion to Compel and for Entry of Confidentiality Order.

23.    On June 25, 2007, Defendants presented James Nye in response to Plaintiffs' Fed.R.Civ.P. 30(b)(6) Deposition Notice to testify regarding permanency planning, including the following topics:

- Policy and procedures by which case plans and permanency goals are prepared, revised, updated and implemented
- Policies and procedures by which DHS takes steps to ensure judicial proceedings occur on a timely basis and that available information is gathered and presented during such proceedings
- Policies and procedures by which DHS attempts to reunify children with their biological families
- Policies and procedures by which DHS prepares and files petitions to terminate parental rights
- Policies and procedures by which DHS places children for adoption

24.    On June 26, 2007, Defendants presented James Gale in response to Plaintiffs' Fed.R.Civ.P. 30(b)(6) Deposition Notice to testify regarding licensing, including the following topics:

- Evaluation, licensing and re-licensing of foster care placements, including follow-up to ensure compliance
- Supervision, monitoring and evaluation of unlicensed foster care settings, including relative homes
- Investigation of licensing violations
- Number of children in unlicensed placements or placements with overdue re-licensure
- Total number of licensed and unlicensed placements from 2004 to the present

25.    On June 27, 2007, we provided Plaintiffs' attorneys with the "latest version" of the Protective Order with the additional paragraph 7.   See email attached at Tab 6.

26.     Later that day, Plaintiffs' attorneys responded that our latest version was unacceptable.

27.     On June 27, 2007, we had a conference call with Plaintiffs' attorneys to discuss our increasing concerns.  It was quite obvious during that conference call that Plaintiffs' attorneys believe that the Federal discovery rules completely supersede any Michigan privacy statutes.  Because we did not believe that we could agree to such an interpretation of Michigan's privacy statutes, I recommended that we submit a sample case file to the Court for an *in camera* review and determination.

Plaintiffs' attorneys rejected my recommendation and instead suggested that we add an additional paragraph ("paragraph 7") to the proposed Protective Order which would (a) identify the areas of disagreement and (b) provide a procedure for resolution.  We agreed to pursue Plaintiffs' attorneys' suggestion and we modified the proposed Protective Order accordingly.

28.     From June 28, 2007 through July 3, 2007, we continued to negotiate with Plaintiffs' attorneys regarding changes to paragraph 7 that would be mutually acceptable.  During those discussions, I suggested to Plaintiffs' attorneys that we jointly review a sample case file of one of the named class Plaintiffs so that we could identify the privacy information that we were uncomfortable releasing without an Order from the Court.  Plaintiffs' attorneys rejected my suggestion and they recommended that we keep trying to negotiate agreeable terms for paragraph 7.

29.     On July 3, 2007, we had a conference call with Plaintiffs' attorneys to further negotiate the terms of paragraph 7 of the proposed Protective Order. Upon the conclusion of that conference call, the attorneys had finally agreed on mutually acceptable terms.  To expedite the approval and entry of the agreed upon Protective Order, I agreed to provide a copy of the Protective Order to the Defendants on the July 4th holiday so that we could secure the appropriate signatures by July 5th.  I did as agreed and provided Plaintiffs' attorneys with a signed Protective Order on July 5.  See email attached at Tab 7.

30.     On July 3, 2007 and July 9, 2007, Defendants presented James Nye in response to Plaintiffs' Fed.R.Civ.P. 30(b)(6) Deposition Notice to testify regarding service delivery, including the following topics:

- Process by which the physical, dental, mental, developmental, and educational needs of children in foster care are met
- Nature and scope of medical services provided to children in foster care
- Process by which foster children are provided Medicaid cards
- Process by which foster parents and caretakers are provided with medical information
- Provision of independent living services

31.     On July 5, 2007, Plaintiffs' attorneys advised me that they would not sign the agreed upon July 3, 2007 Protective Order because the phrase "good faith" remained in paragraph 7.

32.     On July 5, 2007, I advised Plaintiffs' attorney Bartosz that Defendants were producing approximately 13,000 pages of responsive documents on the next day.

33.    On July 6, 2007, Defendants produced approximately 13,000 pages of documents responsive to Plaintiffs' Second Request.

34.    On July 6, 2007, Plaintiffs' attorneys filed the pending Motion to Compel and for Entry of Confidentiality Order.

35.    On July 10, 2007, Defendants presented James Nye in response to Plaintiffs' Fed.R.Civ.P. 30(b)(6) Deposition Notice to testify regarding payment rates and determination of care, including the following topics:

- Payments made to foster parents approved by DHS or CPAs and the process used to determine payment rates, clothing allowances and other monetary support
- Payments made to CPAs that contract with DHS to provide foster care placements and the process used to determine payments and fees
- Collection, maintenance and documentation of payments and rates
- Process used to determine the appropriate level of care and the payment rates associated with each determination of care ("DOC") level
- The number of children at each DOC level

36.    On July 17, 2007, Defendants presented James Nye in response to Plaintiffs' Fed.R.Civ.P. 30(b)(6) Deposition Notice to testify regarding abuse in care, including the following topics:

- Reporting and investigating abuse or maltreatment of children in foster care and remedial actions taken
- Structure, organization and responsibilities of the unit within DHS charged with investigating abuse and neglect allegations
- Job descriptions, qualifications and identities of DHS employees who investigate abuse and neglect allegations
- Source and scope of aggregate data regarding abuse and neglect allegations
- Names, causes of death, investigative process and findings regarding all children who died in foster care custody from 2004 to the present
- Minimally expected contents of files and records of investigations regarding abuse, neglect, corporal punishment, improper restraint, injury or death

37.   On July 18, 2007, Defendants presented James Nye in response to Plaintiffs' Fed.R.Civ.P. 30(b)(6) Deposition Notice to testify regarding data collection, including the following topics:

- Maintenance and retention of hard copy records
- Electronic databases
- Names, titles, form numbers and descriptions of records
- Contents of children's case files
- Maintenance and retention of licensing, placement and Title IV-E eligibility data and statistics
- Efforts to ensure accuracy, integrity and security of data

38.   As of July 20, 2007, Defendants have retrieved more than 100,000 pages of files that are responsive to Plaintiffs' First Request.   Defendants are in the process of redacting personal identification information of absent and non-class members from these files. Defendants anticipate producing these redacted files to Plaintiffs during the next three weeks.

39.   On July 20, 2007, Defendants produced an additional 35,000 pages of responsive documents.

40.   As of July 20, 2007, Defendants have retrieved an additional 40,000 pages of potentially responsive documents.  To the extent that the additional documents do not contain protected information, Defendants anticipate producing additional responsive material within the next two weeks.  For those documents that contain material that will be covered by the protective order, Defendants anticipate reviewing and producing the remainder of those documents within two weeks of the Court's entry of a protective order.

41.   On July 25, 2007, Defendants plan to present John Sorbet in response to Plaintiffs' Fed.R.Civ.P. 30(b)(6) Deposition Notice to testify regarding budget matters, including the following topics:

- DHS child welfare and foster care budgets, projections, allocations and spending
- Identity of individuals responsible for developing budgets, projections, allocations, spending and sources of funding
- Identity and location of budget documents and computer records
- Identity of DHS employees responsible for Title IV-E filings, applications, reporting and tracking and records relating to the same
- Title IV-E funding increases, decreases or impairments
- Title IV-E penetration rates
- Amount of State Automated Child Welfare Information Systems Title IV-E funds secured by the state
- State and federal internal and external audits of DHS fiscal practices

42.    On July 26, 2007, Defendants plan to present James Nye in response to Plaintiffs' Fed.R.Civ.P. 30(b)(6) Deposition Notice to testify regarding Michigan's Program Improvement Plan ("PIP"), including the following topics:

- Preparation and implementation of the PIP
- Generation of performance data regarding the PIP
- Preparation of all quarterly reports
- Communication and coordination between DHS and the Department of Health and Human Services regarding the PIP

43.    I declare under the penalty of perjury under the laws of the states of Michigan that the foregoing is true and correct.

BY:_____
B. Jay Yelton, III
Miller, Canfield, Paddock and Stone,
P.L.C.
444 West Michigan Avenue
Kalamazoo, MI 49007
(269) 381-7030

KZLIB:548720.1\060531-00069

Tab 1

to

Declaration of B. Jay Yelton, III

Case No. 2:06-CV-13548

## Yelton III, B. Jay

| | |
|---|---|
| **From:** | Elissa Gelber [egelber@childrensrights.org] |
| **Sent:** | Friday, June 08, 2007 3:49 PM |
| **To:** | Morris, William; Yelton III, B. Jay; Sysol, Brad H. |
| **Cc:** | levingstonl@michigan.gov; Sara Bartosz; Susan Lambiase; Gena Wiltsek; Talia Kraemer |
| **Subject:** | 6/7 Conference Call Follow-up |

Bill, Jay, Rick, Brad,
Thanks for the productive call yesterday. The following is a summary of the key points -- let us know if we have left anything out.

**Upcoming Conference Calls**

- o Our weekly call **next Thursday (June 14th),** will be at **4pm**, rather than 3pm. Call in information is: 866.359.1324 (#0738).
- o In addition, we plan to speak on **Monday (June 11th)** at **2pm** to discuss the confidentiality order, as noted below. We will call Jay directly, unless we hear otherwise.

**Confidentiality Order**

- o We have attached below a copy of the order entered in Georgia, as requested, and are trying to get a copy of the Tennessee order.  Defendants will send us a formal response to the draft re-circulated on May 24, 2007 by **Monday (June 11th)**, with a goal of finalizing an order early next week.

**Pending Discovery Requests**

- o Defendants will produce documents responsive to Request Nos. 1-6 of Plaintiffs' 1st RFPD by **next Friday (June 15th)**.
- o Defendants will produce documents responsive to Request No. 7 of Plaintiffs' 1st RFPD on a rolling basis beginning next **Wednesday (June 12th)**, to be completed by the **following Wednesday (June 19th).**
- o Defendants will produce objections to Plaintiffs' 2d RFPD by **Friday, June 22d**.
- o Defendants will begin producing documents responsive to Plaintiffs' 2d RFPD on **Friday, June 22d.**
- o Defendants will inform Plaintiffs of their full discovery plan for responding to Plaintiffs' 2d RFPD **on Friday, June 22d**, including a date by which all documents responsive to all requests will be produced.

**Deposition Schedule**

- o 30(b)(6) deposition scheduled for **June 26th** (Jim Nye re: Permanency Planning in Ann Arbor) will proceed as planned (along with 30(b)(6) depositions on June 20th, 21st, and 25th confirmed in my email of 5/31).
- o Defendants will provide us with dates and names for the remaining seven 30(b)(6) requests on our call **next Thursday (June 14th)**.

**Joint Case Record Review**

- o Defendants will let us know whether they are available for a methodology meeting with CRC on **Tuesday, June 19th** or **Thursday, June 22d**.

**Initial Disclosures**

   o   Mutual exchange of Rule 26 disclosures will occur **on Monday, July 9th**, and will be supplemented going forward.

Elissa A. Gelber
Staff Attorney
Children's Rights
330 7th Ave., 4th Fl.
New York, NY 10001
p 212.683.2210 x335
f  212.683.4015
egelber@childrensrights.org
www.childrensrights.org

<<Kenny A. protective order 8.02.pdf>>

Tab 2

to

Declaration of B. Jay Yelton, III

Case No. 2:06-CV-13548

**Yelton III, B. Jay**

---

**From:**     Elissa Gelber [egelber@childrensrights.org]
**Sent:**      Tuesday, June 05, 2007 10:39 PM
**To:**         Yelton III, B. Jay
**Cc:**         Morris, Willaim Esq.; Levingston, Luttrell D.; Susan Lambiase; Sara Bartosz; Gena Wiltsek
**Subject:** RE: CRI v. Granholm

Jay,

Thank you for the chart and status update.  We will review the discovery items you mention tomorrow, and look forward to discussing further on the Thursday call.  In the meantime, please note that we await your response to our proposed confidentiality order.

We did receive Bill's email re: the case record review on Friday -- thanks.

As to points of contact here, please direct all correspondence to Sara Bartosz, Susan Lambiase, Gena Wiltsek and myself (all copied above).

Thank you,
Elissa

---

**From:** Yelton III, B. Jay [mailto:Yelton@MillerCanfield.com]
**Sent:** Tue 6/5/2007 7:43 PM
**To:** Elissa Gelber
**Cc:** Morris, Willaim Esq.; Levingston, Luttrell D.
**Subject:** CRI v. Granholm

Hello Elissa.  As a follow-up, I promised that we would clarify a couple of items with respect to your summary of our 5/31 conference call.

Under the category of "Pending Discovery Requests", you indicated that we would send you a chart of information we have gathered in response to Request #7.  We want clarify that we did promise to send you a chart, but we did not indicate that the chart would be complete or even near complete at this stage.  Instead, we promised to send you a sample chart which hopefully can form the basis for an agreed upon process for collecting responsive data to Request #7.  The sample chart is attached hereto and we are prepared to discuss it with you during our next conference call this Thursday.

Please note that we realize that this attached chart remains a work-in-progress.  As we continue to identify additional sources where the requested data might be maintained, we will include those locations in the top row of the chart.  We are also attempting to determine to what extent is duplicative/cumulative data being maintained in these multiple locations.  Assuming that the same or cumulative data is maintained at multiple locations, we are determining from which location said data can most quickly and inexpensively be obtained.  We plan to continue this learning process during the next 2 days and then to provide you a status report on Thursday.  Based on this information, we hope to work with you to narrow and/or prioritize where responsive data needs to be collected.

7/20/2007

With respect to the second bullet point under "Pending Discovery Requests", please note that we plan to produce responses and objections to your 1st Request for Production by tomorrow, but we don't plan to produce any documents at that time.  We won't be producing responsive documents until after the protective order has been entered by the Court.

Finally, hopefully you did receive Bill's email last Friday regarding our position on the Joint Case Record Review.  If not, please advise and we can resend.

We look forward to making additional progress on these issues on Thursday.  For future status emails, should we just direct them to you or would you prefer that we send them to the your whole team ?  Jay

NOTICE TO PERSONS SUBJECT TO UNITED STATES TAXATION (MCPS)

DISCLOSURE UNDER TREASURY CIRCULAR 230: The United States Federal tax advice, if any, contained in this document and its attachments may not be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement, nor is such advice intended or written to be used, and may not be used, by a taxpayer for the purpose of avoiding Federal tax penalties.

Tab 3

to

Declaration of B. Jay Yelton, III

Case No. 2:06-CV-13548

**Yelton III, B. Jay**

**From:** Yelton III, B. Jay
**Sent:** Thursday, June 14, 2007 1:02 AM
**To:** Sara Bartosz; 'Elissa Gelber'
**Cc:** Morris, William Esq.; McCamman, Kurt P.
**Subject:** Dwayne B Consent Protective Order



Scan001.PDF (113 KB)

Hello Sara and Elissa.

Attached is a copy of a proposed protective order based on our discussion with you on Tuesday. Other than minor modifications to accommodate concerns raised by us and/or you, the proposed protective order is essentially identical to the one that CRI entered into in the Georgia case.

Please note that we have received general approval from the Department and AG's Office that a protective order similar to the Georgia protective order is acceptable. However, we still need to obtain their final approval of the attached protective order. However, before seeking that final approval, we want to confirm CRI's acceptance.

Assuming that we can agree on this protective order this week, and obtain the Court's entry of the Order by early or mid-next week, we anticipate that we will be in a position to begin producing to you documents responsive to RFP No. 1 by the end of next week.

It appears that my meetings in Lansing tomorrow are likely to last longer than initially anticipated. As a consequence, I would like to move our Thursday 4 pm TC to Friday afternoon. Please confirm whether that is doable, and if so, when on Friday afternoon would be best for your schedule.

We look forward to talking with you in hopes to finalize this Order as soon as possible. Thanks, Jay.

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

DWAYNE B., by his next friend, John Stempfle;
CARMELA B., by her next friend, William Ladd;
LISA J., by her next friend, Teresa Kibby; and
JULIA, SIMON and COURTNEY G., by their next
Friend, William Ladd; for themselves and others
similarly situated,

       Plaintiffs,

v.

JENNIFER GRANHOLM, in her official capacity
As Governor of the State of Michigan, MARIANNE
UDOW, in her official capacity as Director of the
Michigan Department of Human Services ("DHS");
LAURA CHAMPAGNE, in her official capacity as
Chief Deputy Director of DHS Operations; and
JAMES HENNESSEY, in his official capacity as
Deputy Director of DHS Children's Services,

       Defendants.

_____/

Case No. 2:06-cv-13548

Hon. Nancy G. Edmunds

**Class Action**

## CONSENT PROTECTIVE ORDER

The case is presently in the discovery stage and such discovery will involve review of confidential files and records of minors in the physical and/or legal custody of the Michigan Department of Human Services ("Department"). Accordingly, good cause having been shown and the parties having consented to entry of this Protective Order, IT IS HEREBY ORDERED THAT:

1.     All documents produced by the Department which are confidential under Michigan or Federal law and all individual identifying information[1] disclosed during discovery (collectively "Confidential Information") shall be treated as confidential by all parties to this litigation and their counsel.  Such Confidential Information, and all copies, summaries, compilations, notes or abstracts thereof, shall be used exclusively in this action and for no other purpose, and shall not be disclosed except as stated herein. However, this Protective Order does not affect that right of either party to use summary data or calculations that based thereon, provided that such summary data or calculations do not reflect individual identifying information.

2.     Upon the conclusion of this action, all copies of confidential records shall be returned to the Department or destroyed within 90 days of the conclusion of the case, and all notes, abstracts or summaries of confidential documents shall be destroyed by counsel within 90 days of the conclusion of the case.

3.     Confidential Information may be disclosed to counsel for the parties, to persons employed as independent experts or consultants, witnesses and employees of counsel who have a need to review the Confidential Information to aid in the litigation of this case.  Such employees of counsel shall maintain and honor the confidentiality of the Confidential Information.  Disclosure of Confidential Information to persons (including consultants and experts and witnesses) other than counsel and his or her employees shall

---

[1] "Individual identifying information" means information or facts including but not limited to a person's name, address, telephone number, social security number, date of birth, and other facts likely to enable other persons to identify the person.

-2-

be conditioned upon their agreeing, by signing a statement identical to Exhibit "A" hereto, to be bound by this Order.

Former and current employees and officers of the Department and witnesses may review such Confidential Information to the extent deemed necessary by counsel to prepare the witness for deposition or testimony. The Court, Court personnel, court reporters and persons preparing deposition transcripts may review such Confidential Information as necessary. Other persons may review Confidential Information only upon consent of the parties or Court order, and only after signing Exhibit "A".

4. If Confidential Information is used during depositions or in pleadings or briefs, the relevant portions of the deposition shall be treated as confidential in accordance with this Order and Administrative Order No. 05-AO-025, signed by Chief Judge Bernard A. Friedman on December 8, 2005.

5. Any document or deposition designated as confidential under this Order shall, if filed with the Court, be clearly marked "confidential," sealed, placed in separate, secure envelope, and opened only by authority of the Court.

6. This Protective Order shall govern all pre-trial proceedings, but shall be subject to modification either before, during, or after any hearing or trial, upon Court, Court personnel, consent of the parties, or upon application of any of the parties to this action and for good cause shown.

7. The provisions of this Order shall not affect the admissibility of evidence at trial or any preliminary evidentiary proceeding except as directed by separate order entered for good cause shown.

-3-

IT IS SO ORDERED, this _____ day of _____, 2007.


_____
Hon. Nancy G. Edmunds
United States District Court
Eastern District of Michigan


APPROVED AS TO FORM:


_____
William R. Morris
Assistant Attorney General
Attorney for Defendants


_____
B. Jay Yelton, III
Special Assistant Attorney General
Attorney for Defendants


_____
Marcia Robinson Lowry
Children's Rights, Inc.
Attorney for Plaintiffs


_____
Samuel Damren
Attorney for Plaintiffs


KZLIB:545769.1\060531-00069

Tab 4

to

Declaration of B. Jay Yelton, III

Case No. 2:06-CV-13548

**Yelton III, B. Jay**

---

**From:**     Sara Bartosz [sbartosz@childrensrights.org]
**Sent:**     Friday, June 15, 2007 10:38 AM
**To:**       Yelton III, B. Jay
**Cc:**       Elissa Gelber
**Subject:** FW: Attached Image

Jay: Attached is our mark-up of the proposed confidentiality order you supplied yesterday.  I believe that our comments are self-explanatory, but will be happy to address any need for clarification or amplification later today during our call.

In reviewing and assessing your proposed protective order language, we have determined that we cannot agree to use the general description "all documents produced by the Department which are confidential under Michigan or Federal law …" in any stipulated order.  This broad "catchall" language provides counsel for both sides with no readily discernable boundaries for purposes of defining those documents that require special treatment under the order.  We propose instead that the privacy statutes of interest be specifically identified – we anticipate that these statutes would include the applicable MCL provisions regarding the privacy and public disclosure or release of CPS/Foster Care files (MCL 722.627 with subparts; MCL 722.120(2)), possibly the Michigan HIV privacy law (MCL 333.5131) and possibly federal HIPAA (as construed in 45 CFR 164.512).

Of course, not all privacy laws in Michigan or under the United States Code will be implicated by the foster care records to be produced in this litigation –merely some small subgroup thereof.  We believe that it is reasonable to limit the language of the order to address only those privacy laws that your clients reasonably expect to be implicated by the pending document requests. We are happy to look at any additional statutes that concern you or your clients and to address them in the order as appropriate.  Our goal is to assure the privacy of individually identifiable information without unduly burdening the discovery and evidentiary processes by making it practically difficult and quite burdensome for counsel, their clients and any consultants to ascertain which documents fall within the ambit of the protective order for special treatment. I trust that this approach will be viewed as reasonable by you and your clients.

Tab 5

to

Declaration of B. Jay Yelton, III

Case No. 2:06-CV-13548

## Yelton III, B. Jay

**From:** Yelton III, B. Jay

**Sent:** Tuesday, June 26, 2007 6:09 PM

**To:** Sara Bartosz; 'Elissa Gelber'

**Cc:** McCamman, Kurt P.; Bargy, Dari C.

**Subject:** FW: Confidentiality Order

**Importance:** High

Hi Sara and Elissa. Is it possible we can discuss the following concerns tomorrow afternoon ? How about 3 pm ?

Dari's research indicates that there are certain documents that she is finding within a case file that we can not produce irrespective of the confidentiality order. However, I don't want to mislead you by agreeing to a confidentiality order and then not producing certain documents that are protected by the Michigan statutes cited to below.

> -----Original Message-----
> **From:** Bargy, Dari C.
> **Sent:** Tuesday, June 26, 2007 5:08 PM
> **To:** Yelton III, B. Jay
> **Cc:** McCamman, Kurt P.
> **Subject:** Confidentiality Order
> **Importance:** High
>
> Jay-
>
> I'm planning on a continued review of the production this week. I also had an opportunity to review the proposed consent protective order and have some concerns. I am not sure whether you are aware that the Child Protection Law MCL 722.621 *et. seq.* proscribes the disclosure of documents filed with the Family Independence Agency. MCL 722.627. This includes documents that originate within the Department of Social Services or documents transmitted to it by others. Essentially, the department is bound by statute not to disclose these documents unless a <u>court</u> determines the information is necessary or they are released to a lawyer-guardian ad litem appointed in a case brought under the Child Protection Law. There are other exceptions, but no others appear to have any application here.
>
> If we are planning on producing case files, it may be necessary to get some direction from the court first. Otherwise we may be at risk of violating section 7.
>
> My other concern is with Michigan privacy law. If case files are produced, there may be information within those files that are prohibited from disclosure by Michigan law. See e.g. physician-patient records, MCL 600.2157; psychologist/psychiatrist records, MCL 333.18237, MCL 330.1750, MCL 330.1946; disclosure of HIV/AIDS data, MCL 333.5131; prescription drug information, MCL 333.17752; communications with circuit court family counselors, MCL 551.339; adoption records, MCL 710.67; drug abuse patient information, MCL 333.6111; records of child care organizations, MCL 722.120; information regarding the recipient of mental health services, MCL 330.1748; probation records, MCL 791.229; communications with a domestic violence/sexual assault counselor, MCL 600.2157a; a reporting person's identity under the Child Protection Law, MCL 722.625.
>
> Even if certain privileges are waived as to the child, my review of the production indicates that these case files may contain privileged or confidential information of persons other than the child (i.e. a sibling, parent, caregiver). Such information could not be disclosed.
>
> I have had some experience in other matters concerning the scope of Michigan law as it pertains to the disclosure of privileged or confidential information. I have found that Michigan tends to be more restrictive than other states and Federal law. For example, under HIPPA, third-party patient information may be disclosed between litigants if a protective order/confidentiality agreement is in place. Michigan law does not permit the same disclosure. In fact, MCL 600.2157 is so protective of patient privacy, it strictly forbids the disclosure of any patient information, even when the privileged information is redacted. *Baker v Oakwood Hosp Corp*, 239 Mich App 461, 463; 608 NW2d 823 (2000).

Case 2:06-cv-13548-NGE-DAS   ECF No. 56-7, PageID.887   Filed 07/20/07   Page 31 of 49

I don't know whether these issues have been raised in prior discussions with opposing counsel.  Please let me know if you would like me to do any follow up on this.

Dari

Tab 6

to

Declaration of B. Jay Yelton, III

Case No. 2:06-CV-13548

**Yelton III, B. Jay**

---

**From:**    Bargy, Dari C.
**Sent:**    Wednesday, June 27, 2007 5:22 PM
**To:**      'Sara Bartosz'; 'Elissa Gelber'
**Cc:**      McCamman, Kurt P.; Yelton III, B. Jay
**Subject:** Confidentiality Order

Sara-

I have attached the latest version of the confidentiality order.  With the exception of paragraph 7, I believe we are in agreement on the order in all other respects.

Regards,
Dari Craven Bargy
Miller Canfield Paddock & Stone
444 West Michigan Avenue
Kalamazoo, Michigan 49007
(269) 381-7030

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

DWAYNE B., by his next friend, John Stempfle;
CARMELA B., by her next friend, William Ladd;
LISA J., by her next friend, Teresa Kibby; and          Case No. 2:06-cv-13548
JULIA, SIMON and COURTNEY G., by their next
Friend, William Ladd; for themselves and others          Hon. Nancy G. Edmunds
similarly situated,

      Plaintiffs,

v.                                                       **Class Action**

JENNIFER GRANHOLM, in her official capacity
As Governor of the State of Michigan, MARIANNE
UDOW, in her official capacity as Director of the
Michigan Department of Human Services ("DHS");
LAURA CHAMPAGNE, in her official capacity as
Chief Deputy Director of DHS Operations; and
JAMES HENNESSEY, in his official capacity as
Deputy Director of DHS Children's Services,

      Defendants.
_____/

**INTERIM CONSENT PROTECTIVE ORDER**

The case is presently in the discovery stage and such discovery will involve

review of confidential files and records of minors in the physical and/or legal custody of

the Michigan Department of Human Services ("Department"). Accordingly, good cause

having been shown and the parties having consented to entry of this Protective Order, IT

IS HEREBY ORDERED THAT:

1.    All documents produced by the Department which contain confidential information protected under the following Federal and/or Michigan laws:

    a.    Any information which identifies by name or address, or could reasonably lead to the disclosure of the name or address of any applicant for or recipient of child welfare, foster care or adoption assistance services; [42 U.S.C. 671(a)(g), 45 CFR 1355.21]

    b.    Any information concerning the amounts of financial assistance provided to particular individual recipients of child welfare, foster care or adoption assistance services; [45 CFR 205.50]

    c.    Any information related to the social and economic conditions or circumstances of a particular individual applicant for or recipient of child welfare, foster care or adoption assistance services; [45 CFR 205.50]

    d.    Agency evaluations of information about a particular individual applicant for or recipient of child welfare, foster care or adoption assistance services; [45 CFR 205.50]

    e.    Medical data concerning a particular individual applicant for or recipient of child welfare, foster care or adoption assistance services; [45 CFR 205.50]

    f.    All records of child abuse reports and all information obtained in investigating reports of child abuse and neglect; [45 CFR 1340.14]

    g.    All information and documents meeting requirements for de-identification of protected health information. [45 CFR 164.514]

and all individual identifying information[1] disclosed during discovery ("Confidential Information") shall be treated as confidential by all parties to this litigation and their counsel. Such Confidential Information shall be used exclusively in this action and for

---

[1] "Individual identifying information" means information or facts, regarding a person covered under any public act or statute identified herein that is protected from disclosure by any public acts or statutes, including but not limited to such person's name, address, telephone number, social security number, date of birth, and other facts likely to enable other persons to identify the person.

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

no other purpose, and shall not be disclosed except as stated herein. However, this Protective Order does not affect the right of either party to use or disclose summary data or calculations that are based thereon, provided that such summary data or calculations do not reflect individual identifying information.

2.      Upon the conclusion of this action, all copies of confidential records shall be returned to the Department or destroyed within six months of the conclusion of the case, and all notes, abstracts or summaries of confidential documents shall be destroyed by counsel within six months of the entry by the Court of a final judgment in this case.

3.      Confidential Information may be disclosed to counsel for the parties, to persons employed as independent experts or consultants, witnesses and employees of counsel who have a need to review the Confidential Information to aid in the litigation of this case. Such employees of counsel shall maintain and honor the confidentiality of the Confidential Information. Disclosure of Confidential Information to persons (including consultants and experts and witnesses) other than counsel and his or her employees shall be conditioned upon their agreeing, by signing a statement identical to Exhibit "A" hereto, to be bound by this Order.

Former and current employees and officers of the Department and witnesses may review such Confidential Information to the extent deemed necessary by counsel to prepare the witness for deposition or testimony. The Court, Court personnel, court reporters and persons preparing deposition transcripts may review such Confidential Information as necessary. Other persons may review Confidential Information only upon consent of the parties or Court order, and only after signing Exhibit "A".

4.      If Confidential Information is used in or attached to pleadings, briefs or other filings with the Court, this information shall be treated as confidential and redacted in accordance with this Order and Administrative Order No. 05-AO-025, signed by Chief Judge Bernard A. Friedman on December 8, 2005.

5.      This Protective Order shall govern all pre-trial proceedings, but shall be subject to modification either before, during, or after any hearing or trial, upon Court, Court personnel, consent of the parties, or upon application of any of the parties to this action and for good cause shown.

6.      The provisions of this Order shall not affect the admissibility of evidence at trial or any preliminary evidentiary proceeding except as directed by separate order entered for good cause shown.

7.      Notwithstanding that this Order has been entered into voluntarily, after serious good faith negotiation, the parties acknowledge that they have failed to agree upon the final form of a suitable protective order and that defendants do not intend to produce certain information that may be prohibited from disclosure pursuant to State law including but not limited to: MCL 722.267 (child protection law); MCL 600.2157 (physician-patient records); MCL 333.18237, MCL 330.1750, MCL 330.1946 (psychologist/psychiatrist records);   MCL 333.5131 (disclosure of HIV/AIDS data); MCL 333.17752 (prescription drug information); MCL 551.339 (communications with circuit court family counselors); MCL 710.67 (adoption records); MCL 333.6111 (drug abuse patient information); MCL 722.120 (records of child care organizations); MCL 330.1748 (information regarding the recipient of mental health services); MCL 791.229

-4-

(probation records); MCL 600.2157a (communications with a domestic violence/sexual assault counselor); MCL 722.625 (a reporting person's identity under the Child Protection Law); MCL 722.929 (ombudsman report); MCL 333.18513 (social worker records).

Because plaintiffs are desirous of obtaining access to records as soon as possible, the parties have stipulated to the terms of this Interim Consent Protective Order intending that it shall govern disclosure of material between the parties unless and until the Court orders otherwise.   The parties acknowledge that plaintiffs may move to modify this paragraph, and that nothing contained herein is intended to limit the parties' ability to seek to modify this Order.

IT IS SO ORDERED, this _____ day of _____, 2007.


_____
Hon. Nancy G. Edmunds
United States District Court
Eastern District of Michigan

APPROVED AS TO FORM:

_____

William R. Morris
Assistant Attorney General
Attorney for Defendants


_____

B. Jay Yelton, III
Special Assistant Attorney General
Attorney for Defendants


_____

Marcia Robinson Lowry
Children's Rights, Inc.
Attorney for Plaintiffs


_____

Samuel Damren
Dykema Gossett
Attorney for Plaintiffs

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

-6-

Tab 7

to

Declaration of B. Jay Yelton, III

Case No. 2:06-CV-13548

**Yelton III, B. Jay**

| | |
|---|---|
| **From:** | Yelton III, B. Jay |
| **Sent:** | Thursday, July 05, 2007 12:01 PM |
| **To:** | 'Sara Bartosz'; Elissa Gelber; Gena Wiltsek |
| **Cc:** | 'klenart@dykema.com' |
| **Subject:** | Michigan PO |

Scan001.PDF (231 KB)

Attached is the PO as signed by the defendants. At your earliest convenience, please provide us a copy of the fully executed and entered PO. Thanks, Jay.

1

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

DWAYNE B., by his next friend, John Stempfle;
CARMELA B., by her next friend, William Ladd;
LISA J., by her next friend, Teresa Kibby; and
JULIA, SIMON and COURTNEY G., by their next
Friend, William Ladd; for themselves and others
similarly situated,

      Plaintiffs,

v.

JENNIFER GRANHOLM, in her official capacity
As Governor of the State of Michigan, MARIANNE
UDOW, in her official capacity as Director of the
Michigan Department of Human Services ("DHS");
LAURA CHAMPAGNE, in her official capacity as
Chief Deputy Director of DHS Operations; and
JAMES HENNESSEY, in his official capacity as
Deputy Director of DHS Children's Services,

      Defendants.

_____/

Case No. 2:06-cv-13548

Hon. Nancy G. Edmunds

**Class Action**

**INTERIM CONSENT PROTECTIVE ORDER**

The case is presently in the discovery stage and such discovery will involve review of confidential files and records of minors in the physical and/or legal custody of the Michigan Department of Human Services ("Department"). Accordingly, good cause having been shown and the parties having consented to entry of this Protective Order, IT IS HEREBY ORDERED THAT:

1.    All documents produced by the Department which contain confidential information protected under the following laws:

    a.    Any information which identifies by name or address, or could reasonably lead to the disclosure of the name or address of any applicant for or recipient of child welfare, foster care or adoption assistance services; [42 U.S.C. 671(a)(g), 45 CFR 1355.21]

    b.    Any information concerning the amounts of financial assistance provided to particular individual recipients of child welfare, foster care or adoption assistance services; [45 CFR 205.50]

    c.    Any information related to the social and economic conditions or circumstances of a particular individual applicant for or recipient of child welfare, foster care or adoption assistance services; [45 CFR 205.50]

    d.    Agency evaluations of information about a particular individual applicant for or recipient of child welfare, foster care or adoption assistance services; [45 CFR 205.50]

    e.    Medical data concerning a particular individual applicant for or recipient of child welfare, foster care or adoption assistance services; [45 CFR 205.50]

    f.    All records of child abuse reports and all information obtained in investigating reports of child abuse and neglect; [45 CFR 1340.14]

    g.    All information and documents meeting requirements for de-identification of protected health information. [45 CFR 164.514]

    h.    Specified information which is disclosed under the Michigan Child Protection Law [MCL 722.621 et. seq.]

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

and all individual identifying information[1] disclosed during discovery ("Confidential Information") shall be treated as confidential by all parties to this litigation and their counsel. Such Confidential Information shall be used exclusively in this action and for no other purpose, and shall not be disclosed except as stated herein. However, this Protective Order does not affect the right of either party to use or disclose summary data or calculations that are based thereon, provided that such summary data or calculations do not reflect individual identifying information.

    2.    Upon the conclusion of this action, all copies of confidential records shall be returned to the Department or destroyed within six months of the conclusion of the case, and all notes, abstracts or summaries of confidential documents shall be destroyed by counsel within six months of the entry by the Court of a final judgment in this case.

    3.    Confidential Information may be disclosed to counsel for the parties, to persons employed as independent experts or consultants, witnesses and employees of counsel who have a need to review the Confidential Information to aid in the litigation of this case. Such employees of counsel shall maintain and honor the confidentiality of the Confidential Information. Disclosure of Confidential Information to persons (including consultants and experts and witnesses) other than counsel and his or her employees shall be conditioned upon their agreeing, by signing a statement identical to Exhibit "A" hereto, to be bound by this Order.

---

[1] "Individual identifying information" means information or facts, regarding a person covered under any public act or statute identified in paragraphs 1 and 7 of this Interim Consent Protective Order that is protected from disclosure by such public acts or statutes, including but not limited to such person's name, address, telephone number, social security number, date of birth, and other facts likely to enable other persons to identify the person.

Former and current employees and officers of the Department and witnesses may review such Confidential Information to the extent deemed necessary by counsel to prepare the witness for deposition or testimony. The Court, Court personnel, court reporters and persons preparing deposition transcripts may review such Confidential Information as necessary. Other persons may review Confidential Information only upon consent of the parties or Court order, and only after signing Exhibit "A".

4.      If Confidential Information is used in or attached to pleadings, briefs or other filings with the Court, this information shall be treated as confidential and redacted in accordance with this Order and Administrative Order No. 05-AO-025, signed by Chief Judge Bernard A. Friedman on December 8, 2005.

5.      This Protective Order shall govern all pre-trial proceedings, but shall be subject to modification either before, during, or after any hearing or trial, upon consent of the parties, or upon application of any of the parties to this action and for good cause shown.

6.      The provisions of this Order shall not affect the admissibility of evidence at trial or any preliminary evidentiary proceeding except as directed by separate order entered for good cause shown.

7.      Notwithstanding that this Order has been stipulated to by the parties after lengthy and good faith negotiations, for entry by this Court for purposes of facilitating ongoing discovery, the parties acknowledge that they have been unable to agree upon a final protective order covering all documents requested by Plaintiffs under Rule 34 of the Federal Rules of Civil Procedure. In relation to the specific statutory sections identified

-4-

in subparagraphs (a) through (o) below in this paragraph: (1) Defendants take the position that they are prohibited by law from disclosing certain responsive documents or disclosing documents without redaction and/or proper legal authorization and (2) Plaintiffs take the position that any and all responsive documents are subject to production by Defendants and that Plaintiffs will further agree to treat any individually identifiable information contained in such records as confidential under the terms set forth in paragraphs (1) through (6) of this Order, *supra*:

a)     MCL 722.622(y)(i-iv) (statutory exceptions to "specified information" as defined under the Child Protection Law);

b)     MCL 600.2157 (physician-patient records);

c)     MCL 333.18237, MCL 330.1750, MCL 330.1946 (psychologist/psychiatrist records);

d)     MCL 333.5131 (disclosure of HIV/AIDS data);

e)     MCL 333.17752 (prescription drug information);

f)     MCL 551.339 (communications with Circuit Court Family Counselors);

g)     MCL 710.67 (adoption records);

h)     MCL 333.6111 (drug abuse patient information);

i)     MCL 722.120 (records of child care organizations);

j)     MCL 330.1748 (information regarding the recipient of mental health services);

k)     MCL 791.229 (probation records);

l)     MCL 600.2157a (communications with a domestic violence/sexual assault counselor);

-5-

m)   MCL 722.625 (a reporting person's identity under the Child Protection Law);

n)   MCL 722.929 (ombudsman report);

o)   MCL 333.18513 (social worker records).

The list of state statutes in subparagraph (a) through (o) of this paragraph is intended to be exclusive in terms of any confidentiality issues reserved by the parties for future litigation in relation to Plaintiffs' requests for production of documents. Moreover, the parties intend to reserve their rights in relation to the applicability of the state statutes identified in subparagraphs (a) through (o) of this paragraph only insofar as any responsive records contain confidential information which shall be redacted, if possible, and recorded on a log so the document or record can be produced.

In the event that Defendants, in their review of documents, determine that other state confidentiality or privacy statutes may apply, the parties shall confer in good faith and may seek to modify this Order accordingly. If the parties are unable to agree to a modification of this Order, Defendants reserve the right to move this Court to modify this paragraph accordingly upon a showing of good cause.

Any records withheld from production by Defendants under this paragraph shall be identified within a log to be produced within three days after the initial production of responsive documents. This log shall identify, for each document withheld, the author, date, subject matter of the document and a description of the asserted basis for excluding the document from production so that Plaintiffs have an adequate factual basis for challenging the assertion of confidentiality.

-6-

8.    Within seven (7) days of entry of this Order, defendants shall produce all Named Plaintiff case files requested in Plaintiffs' First Request for Production of Documents subject to paragraphs 1 and 7 of this Order.

9.    Nothing contained herein is intended to limit the parties' ability to seek to modify this Order.

IT IS SO ORDERED, this _____ day of _____, 2007.

_____
Hon. Nancy G. Edmunds
United States District Court
Eastern District of Michigan

APPROVED AS TO FORM:

_____
William R. Morris
Assistant Attorney General
Attorney for Defendants

_____
B. Jay Yelton, III
Special Assistant Attorney General
Attorney for Defendants

_____
Marcia Robinson Lowry
Children's Rights, Inc.
Attorney for Plaintiffs

_____
Samuel Damren
Dykema Gossett

-7-

Attorney for Plaintiffs

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.