# EXHIBIT G

## to

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL AND FOR ENTRY OF CONFIDENTIALITY ORDER

## Case No. 2:06-CV-13548

The following opinion is presented on-line for informational use only and does not replace the official version. (Mich Dept of Attorney General Web Site - www.ag.state.mi.us)

STATE OF MICHIGAN

**FRANK J. KELLEY, ATTORNEY GENERAL**

Opinion No. 6680

May 14, 1991

SOCIAL SERVICES:

Release of child abuse and neglect information in protective services central registry

Section 7 of the Child Protection Law, MCL 722.627; MSA 25.248(7), does not authorize the Department of Social Services to release records and information contained in the protective services central registry to non-Department child placing agencies for the purpose of investigating and certifying foster homes for licensure by the Department pursuant to MCL 722.115(3); MSA 25.358(15)(3).

Gerald H. Miller

Director

Department of Social Services

P.O. Box 30037

Lansing, MI 48909

You have requested my opinion on the question whether section 7 of the Child Protection Law, MCL 722.627; MSA 25.248(7), authorizes the Department of Social Services to release child abuse and neglect information contained in the protective services central registry system to non-Department child placing agencies for the purpose of investigating and certifying foster homes for licensure by the Department.

The child care organizations act, 1973 PA 116, as amended, MCL 722.111 et seq; MSA 25.358(11) et seq, provides for the licensing and regulation of child care organizations and the establishment of standards of care for child care organizations. Pursuant to section 5(1) of the act, MCL 722.115(1); MSA 25.358(15)(1), "A person, partnership, firm, corporation, association, or nongovernmental organization shall not establish or maintain a child care organization unless licensed or registered by the department...." The term "child care organization," as used in this provision, is defined so as to include foster homes. MCL 722.111(a); MSA 25.358(11)(a). Foster homes are, thus, subject to licensure and regulation under the act.

Recognizing that the very large number of foster homes in the State could make it difficult or impossible for the Department of Social Services to adequately investigate all such homes, the Legislature expressly authorized the Department to delegate a portion of its investigative duties to outside entities. Section 5(3) of the act, MCL 722.115(3); MSA 25.358(15)(3), provides, in pertinent part:

> (3) The department may authorize a licensed child placing agency or an approved governmental unit to investigate a foster family home or a foster family group home pursuant to subsection (1) and to certify that the foster family home or foster family group home meets the licensing requirements prescribed by this act....

The term "child placing agency," as used in this provision, is defined in section 1(c) of the act, MCL 722.111(c); MSA 25.358(11)(c), in part, as:

> [A]n agency organized for the purpose of receiving children for their placement in private family homes for foster care or for adoption. The function of a child placing agency may include the investigation and certification of foster family homes and foster family group homes as provided in this act....

The information obtained during the course of such an investigation is subject to the confidentiality provisions of section 10(2) of the act, MCL 722.120(2); MSA 25.358(20)(2), which states, in pertinent part:

> Records regarding children and facts compiled about children and their parents and relatives shall be deemed confidential and disclosure of this information shall be properly safeguarded by the child care organization, the department, and any other entity in possession of the information.

The central registry system was established pursuant to section 7 of the Child Protection Law, 1975 PA 238, as amended, MCL 722.627; MSA 25.248(7). The purpose of the central registry system is to provide a centralized and confidential compilation of reports and information regarding alleged child abuse and neglect cases gathered under the provisions of that act. Section 7 provides, in pertinent part:

> (1) The department shall maintain a central registry system to carry out the intent of this act. A written report, document, or photograph filed with the department pursuant to this act shall be a confidential record available only to 1 or more of the following:
>
> (a) A legally mandated public or private child protective agency investigating a report of known or suspected child abuse or neglect.
>
> (e) A person, agency, or organization, including a multidisciplinary case consultation team, authorized to diagnose, care for, treat, or supervise a child or family who is the subject of a report or record under this act, or who is responsible for the child's health or welfare.
>
> (i) A person, agency, or organization engaged in a bona fide research or evaluation project, except information identifying a person named in the report or record shall not be made available unless the department has obtained that person's written consent. The person, agency, or organization shall not conduct a personal interview with a family without the family's prior consent and shall not disclose information which would identify the child or the child's family or other identifying information.

A person who permits unauthorized dissemination of information contained in the central registry "is guilty of a misdemeanor and is civilly liable for the damages proximately caused by the dissemination." Child Protection Law, section 13(3), MCL 722.633(3); MSA 25.248(13)(3).

By means of section 7(1) of the Child Protection Law, the Legislature has expressed its clear intent that the records contained in the central registry are, with only very specific and limited exceptions, to be kept strictly confidential. The seriousness with which the Legislature viewed the need for confidentiality in this context is underscored by the provisions of section 13(3) permitting the imposition of both criminal penalties and civil damages against persons violating that confidentiality.

It is necessary, therefore, to examine whether any of the limited exceptions provided in section 7(1) of the Act may be applicable to a child placing agency in its investigation of a foster home under the provisions of the child care organizations act. In reviewing these exceptions, deference must be given to the well-established canon of statutory construction that statutory exemptions and exceptions are to be carefully scrutinized and may not be extended beyond their plain meaning. Northville Coach Line, Inc v. Detroit, 379 Mich 317; 150 NW2d 772 (1967); Grand Rapids Motor Coach Co v. Public Service Comm'n, 323 Mich 624; 36 NW2d 299 (1949). Statutory exceptions are to be given limited

rather than expansive interpretations. Rzepka v. Farm Estates, Inc, 83 MichApp 702; 269 NW2d 270 (1978); Lee v. J.H. Lee & Son, 72 MichApp 257; 249 NW2d 380 (1976).

Applying these principles, it is clear that neither subsection (1)(a) nor (1)(e) of section 7 authorizes disclosure of central registry system information to child placing agencies under the circumstances contemplated here.

Subsection (1)(a), by its express terms, applies only to a child protective agency "investigating a report of known or suspected child abuse or neglect." This language authorizes disclosure only for the purpose of actually investigating and resolving a specific complaint of abuse or neglect. It does not contemplate or authorize a subsequent disclosure of that same complaint for some other purpose, however useful and necessary that subsequent purpose may be. Thus, a subsequent disclosure to a child placing agency, made for the purpose of determining the fitness of a foster home, does not fall within the plain language of the exception provided in subsection (1)(a) of investigating a report of known or suspected child abuse or neglect.

Subsection (1)(e) authorizes disclosure only to a person or agency "authorized to diagnose, care for, treat, or supervise" the child or family "who is the subject of" the report, or "who is responsible for the child's health or welfare." This exception, like that provided in subsection (1)(a), is intended merely to make possible an appropriate response to the specific incident of abuse or neglect which is the subject of the report. It does not authorize disclosure for a more generalized investigative purpose such as licensing.

Subsection (1)(i) authorizes disclosure to "a person, agency, or organization engaged in a bona fide ... evaluation project." It is not entirely clear that a child placing agency engaged in an investigation of a foster home is engaged in a "bona fide ... evaluation project" within the meaning of this provision. However, it is not necessary to resolve this question. The disclosure authorized by subsection (1)(i) is very limited. It may not include "information identifying a person named in the report or record" unless "the department has obtained that person's written consent." Thus, as a practical matter, even assuming that a child placing agency were to qualify to obtain information from the central registry system under section (1)(i), those records would not contain information identifying the persons who are the subject of the report and would, therefore, be of no use in evaluating a particular foster home.

There is no question but that the disclosure described in your letter is for the purpose of protecting the interests of any children who may be placed in foster homes that are investigated by child placing agencies. It must be concluded, however, that while the Legislature has expressly authorized the Department to delegate some of its investigative responsibilities under the child care organizations act to child placing agencies, MCL 722.115(3); MSA 25.358(15)(3), it has not authorized the Department to disclose to such agencies confidential records and reports compiled in the central registry system.

It does not follow, however, that the Department is prohibited from using the information contained in the central registry system in determining whether to license foster homes. While the Department is authorized to delegate certain of its investigative duties under the child care organizations act to child placing agencies, the ultimate responsibility for those investigations, and for issuing the actual licenses, rests with the Department itself. MCL 722.115(1); MSA 25.358 (15)(1). Thus the Department may, upon receipt of the child placing agency's investigative report, conduct such further investigation as it deems necessary, including an examination of the central registry system, prior to issuance of a license to the foster home.

It is my opinion, therefore, that section 7 of the Child Protection Law, MCL 722.627; MSA 25.248(7), does not authorize the Department of Social Services to release records and information contained in the protective services central registry system to non-Department child placing agencies for the purpose of investigating and certifying foster homes for licensure by the Department pursuant to MCL 722.115(3); MSA 25.358(15)(3).

Frank J. Kelley

Attorney General

Last Updated 04/12/2001 12:34:00