UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE B., by his next friend, John
Stempfle, *et al.*,

       Plaintiffs,

v.

RICK SNYDER, in his official capacity as
Governor of the State of Michigan, *et al.*,

       Defendants.
_____/

Case No. 06-13548

Honorable Nancy G. Edmunds

**OPINION AND ORDER REGARDING DISPUTED PROVISIONS
OF IMPLEMENTATION, SUSTAINABILITY, AND EXIT PLAN**

      As reflected in an order dated February 2, 2016, the parties to this suit have entered into an Implementation, Sustainability, and Exit Plan ("ISEP") that replaced and superseded a prior settlement agreement reached by the parties. A dispute has arisen between the parties concerning the proper interpretation of certain provisions of the ISEP. The parties filed briefs in support of their respective readings of these provisions, and the Court heard argument on this matter at a June 8, 2017 status conference held in open court. For the reasons discussed below, the Court is persuaded that Plaintiffs' proposed construction of the disputed ISEP provisions better comports with the language and purpose of the ISEP and the underlying state law governing Michigan's child welfare system.

**I.    The Obligations Set Forth in ISEP § 6.12 Apply to Placements in Unlicensed Kinship Homes.**

      The first of the parties' two disputes concerns § 6.12 of the ISEP, which prohibits the placement of a child in a "foster home" if this placement "will result in: (1) more than three

foster children in that foster home; (2) a total of six children, including the foster family's birth and adopted children; or (3) more than three children under the age of three residing in that foster home." ISEP § 6.12(a). In Defendants' view, the term "foster home" as used in this provision should be understood as referring only to licensed foster homes, and not the unlicensed home of a relative. Plaintiffs, in contrast, contend that there is no basis in the language of the ISEP, viewed as a whole, for construing the term "foster home" in the narrow manner advocated by Defendants. The Court finds that Plaintiffs have the better of the argument on this point.

In support of their preferred reading of the "foster home" language of § 6.12(a) as limited to *licensed* foster homes, Defendants first point to § 6.7 of the ISEP, which provides that children in the "foster care custody" of the Michigan Department of Health & Human Services ("DHHS") "shall be placed only in a licensed foster home, a licensed facility . . . , or an unlicensed relative with a waiver." ISEP § 6.7. In Defendants' view, the distinction in § 6.7 between a "licensed foster home" and an "unlicensed relative" suggests that the similar "foster home" language of § 6.12(a) should be understood as drawing this same distinction — *i.e.,* between licensed foster homes (which are subject to the restrictions set forth in § 6.12(a)) and unlicensed kinship placements (which are not). If Plaintiffs wanted placements with unlicensed relatives to be subject to these same restrictions, Defendants contend that they should have proposed language for § 6.12(a) that encompassed *both* foster homes and unlicensed kinship homes, rather than just the former.

As Plaintiffs correctly observe, however, other ISEP provisions belie the notion that the term "foster home" should invariably be read as encompassing only *licensed* foster

2

homes, while excluding unlicensed kinship placements. Most notably, while Defendants cite the language of § 6.7 as supporting their interpretation of this term, Plaintiffs point to language in the immediately preceding provision, § 6.6, that leads in the opposite direction. Under this provision, when "a suitable relative foster home placement is not available," the DHHS must develop procedures to ensure that a child "is placed in the foster home that is the best available match for that child, irrespective of whether that foster home is a DHHS- or private CPA-operated foster home." ISEP § 6.6. This provision, as Plaintiffs rightly point out, uses the term "relative foster home" to "describe *both licensed and unlicensed* kinship placements." (Dkt. 275, Plaintiffs' Br. at 3 (emphasis in original).) Contrary to Defendants' assertion, then, the unqualified term "foster home" as used in the ISEP is not synonymous with a licensed foster home, and the use of this unadorned term in § 6.12(a) does not exclude the unlicensed home of a relative.

Defendants next contend that Plaintiffs' favored reading of § 6.12(a) would occasionally operate against the best interests of children:

> For example, § 6.12 would prohibit DHHS from placing a brother and sister, both under age 3, with their cousins if two of the cousins were also under age 3. Section 6.12 would also prohibit DHHS from placing a group of three siblings with an aunt and uncle if the aunt and uncle had four children of their own, no matter how favorable the placement.

(Dkt. 276, Defendants' Br. at 1-2.) Defendants acknowledge that under § 6.12(b), the director of the Division of Child Welfare Licencing ("DCWL") can authorize exceptions to the restrictions imposed in § 6.12(a) "when in the best interest of the child(ren) being placed." ISEP § 6.12(b). Nonetheless, because this agency's regulatory jurisdiction ordinarily extends only to licensed placements, Defendants surmise that the DCWL director would lack the authority to grant exceptions involving unlicensed kinship placements.

As Plaintiffs note in response, however, Defendants have identified "no law, regulation or policy . . . that would prevent the Director of DCWL from exercising waiver authority [under § 6.12(b)] in relation to both licensed and unlicensed homes." (Plaintiffs' Br. at 3.) So long as the grant of a waiver would not exceed or otherwise conflict with the director's authority under Michigan law, the parties were free to agree upon an ISEP provision that gave the director the power to make case-by-case exceptions to the prohibitions set forth in § 6.12(a), whether as to licensed foster homes or unlicensed kinship placements. *See Local No. 93, International Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 525-26, 106 S. Ct. 3063, 3077 (1986) (recognizing that a court may enter a consent decree that "provides broader relief than a court could have awarded after a trial," so long as this relief does not "conflict[] with or violate[] the statute upon which" the plaintiff's underlying claims were based). Accordingly, the Court cannot agree with Defendants' assertion that Plaintiffs' proposed reading of § 6.12(a) should be rejected as operating against the best interests of the children for whose benefit the parties entered into the ISEP.

To the contrary, Plaintiffs observe that their preferred construction of § 6.12(a) is more readily harmonized with other ISEP provisions that are intended to serve the best interests of the children covered by the plan. Plaintiffs point, in particular, to a provision stating that relative caregivers should be licensed absent "exceptional circumstances," but mandating that even unlicensed relative caregivers "must meet the same safety standards as non-relative providers." ISEP § 6.17(a). Plaintiffs assert, and the Court agrees, that this provision lends further support to the view that the safety-oriented capacity limits set forth in § 6.12(a) should apply — absent an individualized waiver based on the facts of a particular case — to both licensed foster homes and unlicensed placements with relatives.

4

Accordingly, the Court adopts this reading of § 6.12(a), and rejects Defendants' more narrow construction of this provision as limited solely to licensed foster homes.

II. **The Health and Dental Care Commitments Set Forth in ISEP Sections 6.43, 6.44, and 6.47 Continue to Apply to Children Who Are Reunified with Their Parents on a Trial Basis.**

The parties' second point of contention concerns the commitments in the ISEP that children should be provided with (i) "an initial medical and mental health examination within 30 days of [their] entry into foster care," ISEP § 6.43, (ii) "an initial dental examination within 90 days of [their] entry into [foster] care," ISEP § 6.44, and (iii) "periodic and ongoing medical, dental, and mental health care examinations and screenings" following their initial examinations, ISEP § 6.47. In Defendants' view, because children who have returned to their parents' homes for trial reunification are no longer properly deemed to be in "foster care," they need not be provided with the health care examinations mandated under these three ISEP provisions. In response, Plaintiffs contend that children in trial home reunification placements remain under court supervision and subject to monitoring by their caseworkers, and they challenge Defendants' assertion that the DHHS lacks the authority to enforce health care commitments as to children who have returned to their parents' home. Once again, the Court finds that Plaintiffs' position better comports with the language of the ISEP and the relevant Michigan law.

As a threshold matter, while Defendants read the commitments in §§ 6.43, 6.44, and 6.47 as limited to children who are currently in foster care, (see Defendants' Br. at 3-4), this contention is defeated by the plain language of these provisions. First, the commitments made in the first two provisions are triggered upon a child's "entry into" foster care, ISEP §§ 6.43, 6.44, and nothing in these provisions requires that the child remain in foster care

5

throughout the ensuing 30- or 90-day period in order to obtain the medical and dental examinations called for under these provisions. Likewise, § 6.47 mandates that children be given "periodic and ongoing" health care examinations following the initial examinations provided under §§ 6.43 and 6.44, but this provision lacks any language whatsoever suggesting that these periodic examinations are limited to children who are presently in "foster care." Thus, Defendants' proposed construction of these provisions is flawed in its initial premise.

To be sure, a child must remain in the Plaintiff class in order to obtain the benefits provided under the ISEP, including the examinations called for in §§ 6.43, 6.44, and 6.47. *See* ISEP § 1.4. This class, however, is expressly defined as including children who are in "in-home . . . placements," (*see* 2/15/2007 Class Certification Order at 1), and Plaintiffs point without contradiction to Michigan statutes and regulations confirming (i) that the definition of a "foster child" encompasses children who are "reunified with a parent or guardian but continue[] under the wardship and supervision of the court," Mich. Admin. Code R. 400.12101(j)(i), and (ii) that once a court obtains jurisdiction over a child under Michigan's child welfare law, this jurisdiction continues despite the child's trial return to a parent's home, *see* Mich. Comp. Laws § 712A.2(b) (specifying the conditions under which jurisdiction arises); Mich. Comp. Laws § 712A.2a(1) (providing for the court's continuing jurisdiction "[e]xcept as otherwise provided in this section"); Mich. Comp. Laws § 712A.19(2) (specifying the review hearings that must be held if a child is "subject to the court's jurisdiction" but "remains in his or her home"); Mich. Comp. Laws § 712.19a(12) (providing that the court's jurisdiction over a child "shall be terminated after the court appoints a guardian under this section and conducts a review hearing . . . , unless the

[child] is released sooner by the court"). Moreover, Defendants acknowledge that during a trial reunification, the DHHS retains its responsibility to supervise and monitor the child's safety and well-being and ensure that the child is being given any necessary services. (*See* 6/8/2017 Status Conference Tr. at 39-40.) In light of these considerations, the Court cannot accept Defendants' contention that children who are living with their parents under a trial reunification placement are somehow beyond the reach of the commitments made in §§ 6.43, 6.44 and 6.47 of the ISEP.

This leaves only Defendants' appeal to the "practical consideration[]" that because a child who is reunified with his or her parents is no longer in DHHS custody, the department can no longer ensure that the child is being provided with the health care examinations called for under the ISEP, but instead must rely on the parents' cooperation to fulfill these commitments. (*See* Defendants' Br. at 5.) To the extent that Defendants suggest that the DHHS would have to commence an entirely new judicial proceeding in order to secure a parent's compliance with the ISEP commitments, (*see* 6/8/2017 Status Conference Tr. at 40), the above-cited Michigan statutes appear to contradict this claim that a court automatically surrenders its jurisdiction once a child is returned to his or her home. In any event, even assuming that the DHHS's ability to fulfill the ISEP commitments is somewhat diminished when a child is returned to his or her parents for a trial reunification, Defendants fail to suggest why this would justify relieving the department of these commitments in their entirety during trial reunifications. Rather, if experience reveals that the DHHS is having difficulty meeting its commitments under sections 6.43, 6.44, and 6.47 in light of the enforcement challenges introduced by trial reunifications, Defendants may return to the Court and seek appropriate relief from these commitments. At present, the record does not

warrant such relief.

### III. Conclusion

For the reasons set forth above,

The Court hereby ORDERS that the disputed provisions of the parties' Implementation, Sustainability, and Exit Plan — namely, sections 6.12, 6.43, 6.44, and 6.47 — shall be construed and enforced in accordance with the rulings in the present opinion and order.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: July 25, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 25, 2017, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager