```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MICHIGAN
                     SOUTHERN DIVISION
                       -   -   -
DWAYNE B., a minor, by his Next
Friend, John Stempfle, et al, for
themselves and others similarly
situated,
                                    Case No. 06-cv-13548
         Plaintiff,
                                    HON. NANCY G. EDMUNDS
   v.

GRETCHEN WHITMER, in her official
capacity as Governor of the State
of Michigan, et al,

         Defendant.
_____/
```

**STATUS CONFERENCE VIA ZOOM VIDEO CONFERENCE**

Detroit, Michigan
Tuesday, April 26, 2022

APPEARANCES:

For the Plaintiff:      Samantha Bartosz
                        CHILDREN'S RIGHTS
                        330 Seventh Avenue
                        New York, New York  10001

For the Defendant:      Cassandra A. Drysdale-Crown
                        MICHIGAN ATTORNEY GENERAL
                        P.O. Box 30758
                        Lansing, Michigan  48909
                        (517) 335-7603

*To obtain a copy of this official transcript, contact:*
*Sheila D. Rice  Official Court Reporter*
*(313) 234-2610 • sheila_rice@mied.uscourts.gov*

1  ALSO PRESENT:

2  Monitors Kevin Ryan and Eilene Crummy, Demetrius Starling,
   Director Elizabeth Hertel, Kelly Sesti
3

4

5                       TABLE OF CONTENTS

6  MATTER                                                         PAGE

7  STATUS CONFERENCE

8     Comments by Ms. Crummy                                         4

9     Comments by Mr. Ryan                                           6

10    Comments by Ms. Bartosz                                        9

11    Comments by Ms. Drysdale-Crown                                11

12    Comments by Director Hertel                                   13

13    Comments by Director Starling                                 15

14    Certificate of Court Reporter                                 20

15

16

17

18

19

20

21

22

23

24

25

1   Detroit, Michigan
2   Tuesday, April 26, 2022
3   2:05 p.m.
4                           - - -
5         THE CLERK:  Court calls Case Number 06-13548, D.B
6   versus Whitmer.  This is the date and time set for a status
7   conference.
8         Would counsel please state their name for the record.
9         MS. BARTOSZ:  Good afternoon, your Honor.  For the
10  Plaintiff, Samantha Bartosz from Children's Rights.
11        THE COURT:  Good afternoon.
12        MS. DRYSDALE-CROWN:  And on behalf of State
13  defendants, your Honor, Assistant Attorney General Cassandra
14  Drysdale-Crown.  And I also have with me Director Starling and
15  Director Hertel as well as Kelly Sesti from the department.
16        THE COURT:  Thank you.  And we also have from Public
17  Catalyst Kevin Ryan and Eilene Crummy.
18        So there's been a lot of work done since January in
19  this case, and I commend you all for really digging in and
20  doing the hard lifting that needed to be done, and still needs
21  to be done.
22        I think rather than the usual order that I go, I would
23  just to start with Plaintiff or the Defendant and then hear
24  from the mediators, I will start with Public Catalyst instead
25  and hear from Ms. Crummy and Mr. Ryan.

1          So, Eilene, you're up.

2          MS. CRUMMY: Thank you, your Honor. Good afternoon.

3          Judge, today we are filing the 17th report to the
4   United States District Court for the Eastern District of
5   Michigan in the matter of Dwayne B. v Whitmer covering period
6   20, which is January 1, 2021 through June 30, 2021 under the
7   Modified Implementation Sustainability and Exit Plan, known as
8   the MISEP. This report to the court reflects the status of
9   Michigan's reform efforts as of June 30, 2021.

10          In the interest of providing the court with validated
11   performance information as quickly as possible, the parties
12   agree that this report to the monitors would consist primarily
13   of the table setting forth the monitors' assessment of MISEP
14   performance by Michigan during period 20.

15          At the last status conference on January 20, 2022,
16   your Honor noted areas of sustained noncompliance and required
17   the monitors to work with the parties and submit in April 2022
18   a corrective action plan to help to bring Michigan into
19   compliance with the court's orders. Today the monitors are
20   simultaneously submitting to the court the corrective action
21   plan.

22          At the State's request, the parties agree that the
23   State's performance on five MISEP provisions may be impacted by
24   COVID-19 and agreed that DHHS should not be penalized for
25   negatively skewed performance. The parties also agree that

1 positively skewed performance should likewise not be used as a
2 basis for exiting eligible provisions from court oversight.
3 The parties agree that DHHS's performance on COVID-impacted
4 commitments will not be used by either party to demonstrate
5 sustained compliance or noncompliance under the terms of the
6 MISEP. For these five provisions, performance is described in
7 this report, but not assessed for compliance with the
8 respective performance standards.
9 Of 45 areas in the MISEP, Michigan DHHS consistently
10 met the identified performance standard in eight areas in all
11 applicable periods following the adoption of the MISEP. And in
12 15 additional areas the State met the identified performance
13 standard in at least one period.
14 For period 20, Michigan DHHS met the identified
15 performance standard in 14 of 45 areas we monitored for
16 compliance. Among the areas where the agency achieved high
17 levels of performance are caseloads. DHHS continued to achieve
18 the caseloads standards established for Child Protective
19 Service and purchase of service workers. DHHS met in period 20
20 the standard for licensing workers and came very close to
21 meeting the standards set for foster care workers.
22 Child Protective Service investigations where DHHS met
23 the standard for investigating allegations of abuse and neglect
24 relating to any child in the foster care custody of DHHS by
25 ensuring that allegations of abuse and neglect were not

1  inappropriately screened after investigation.  And with respect
2  to the generation of data, the department continued to produce
3  accurate and verifiable data and has made significant progress
4  in this area.
5          In addition, at the end of MISEP 20 the monitoring
6  team identified multiple commitments eligible for movement
7  based on sustained performance by DHHS.  The MISEP allows that
8  for certain commitments once DHHS has maintained performance
9  for the designated performance standard for two consecutive
10 reporting periods the commitment will be moved to Section 5 of
11 the MISEP, the To Be Maintained section.
12         Five commitments meet these criteria.  CPS
13 investigations and screening, screen-outs, Section 6.12a,
14 worker/child visits, one visit per month, Section 6.21b,
15 worker/parent visits, two visits during the first month,
16 Section 6.22a, support for transitioning to adulthood, the
17 young adult voluntary foster care program, Section 6.36a, and
18 older youth permanency, Section 6.37.
19         The monitors recommend to the court and the parties
20 that these provisions be moved to To Be Maintained.
21         MR. RYAN:  MISEP includes numerous commitments that
22 are important, your Honor, to children's safety and permanency,
23 which the State has not achieved.  In numerous areas, Michigan
24 DHHS has consistently performed more than ten percentage points
25 below the performance standard following the adoption of the

1    MISEP.  And for 14 of these areas, your Honor directed Michigan
2    at the last status hearing to develop and implement a
3    corrective action plan to improve its performance.
4         Eilene and I met together and separately with both
5    parties during the development of the corrective action plan.
6    Our meetings with the State included Director Hertel, Director
7    Starling, their staffs and representatives from Governor
8    Whitmer's office and the Attorney General's office.  The
9    department represented that it engage with its provider
10   community robustly to understand performance barriers and
11   develop remedial approaches.
12        The corrective action plan includes an array of
13   proposals, including strategies that have been effective in
14   other states, strategies that align certain Michigan policies
15   with MISEP commitments and strategies championed by Michigan
16   DHHS leadership as most likely to improve performance.
17        As an example of a strategy that has been effective in
18   other states, Michigan adopted an approach undertaken by New
19   Jersey and Oklahoma with respect to Section 6.9 of the MISEP.
20   In that provision, the parties agreed and the court ordered
21   that children shall not be placed in an emergency or temporary
22   facility, including but not limited to shelter care, more than
23   one time within a 12-month period unless specific exceptions
24   apply.  Children under 15 years of age experiencing a
25   subsequent emergency or temporary facility placement within a

1   12-month period may not remain in an emergency or temporary
2   facility for more than seven days.  Children 15 years of age or
3   older experiencing a subsequent emergency or temporary facility
4   placement within a 12-month period may not remain in an
5   emergency or temporary facility for more than 30 days.
6           The parties agreed on a performance standard of 95
7   percent.  In the four periods since the MISEP was adopted,
8   Michigan's performance has been 6.3 percent, 12.5 percent, 2.9
9   percent, and most recently 18.2 percent.
10          In this corrective action plan, Michigan has agreed to
11  adopt the strategy that worked effectively to reduce
12  inappropriate shelter utilization in Oklahoma and New Jersey
13  requiring the director of the agency to personally review and
14  authorize shelter placements.
15          As an example of strategies championed by the
16  department leadership as most likely to improve performance,
17  Director Hertel and Director Starling advanced a set of
18  approaches to one of the primary causes of maltreatment in care
19  in congregate settings, the inappropriate use of child
20  restraints.  Michigan DHHS reported 271 instances of child
21  restraints in March 2021 and 250 instances of child restraints
22  in April 2021.  The frequency rose this year to 358 child
23  restraints in January 2022 and 383 child restraints in February
24  2022.
25          Rather than reissue regulations banning certain types

1  of restraints, the department strongly believes its Section
2  5.1, corrective action strategies, including enhanced training
3  and new guidance, are most likely to ensure child safety and
4  reduce the frequency of child -- of restraints, and the CAP
5  imbeds those strategies.
6           Child safety remains a paramount focus of our
7  monitoring work.  We are currently reviewing a significant
8  sample of the department's maltreatment in care investigations,
9  which will be part of our period 21 report, as well as a
10 significant sample of maltreatment in care investigations from
11 October 2021 through September 2022.  We will apprise the court
12 and the parties of our findings as we complete these reviews.
13          Thank you, your Honor.
14          THE COURT:  Thank you, Mr. Ryan.
15          So, Ms. Bartosz, let's hear from you.
16          MS. BARTOSZ:  Good afternoon, your Honor.  Thank you.
17          THE COURT:  Good afternoon.
18          MS. BARTOSZ:  Your Honor, Plaintiffs have had
19 opportunity to review the MISEP 20 report that is being
20 released today by the monitors and submitted to the court.
21          And, your Honor, when we were last before the court I
22 think the court very appropriately noted that there was
23 something like 14 areas that were very safety connected that
24 DHHS has been challenged in meeting and called attention to
25 those areas and asked that corrective actions be considered.

1    We read over, plaintiffs, the period 20 report, and
2 noted all commitments, but paid particular attention to those
3 14 or so safety areas that we've been focusing on the
4 corrective action planning period and note that the struggles
5 continue.
6    But, your Honor, I'm very pleased to report on behalf
7 of Plaintiffs that we were invited to discussions with the
8 monitors. We were invited to take part in discussions with
9 both the monitors and the state officials. And good faith,
10 very focused, very targeted discussions took place around how
11 do we make this system adequately safe for children, with the
12 best interest of children really screaming out as what people
13 were worrying about.
14    And so we were pleased to see those discussions. We
15 were pleased to see a corrective action plan come together that
16 we think gives reason for real hope and optimism that real
17 progress can take place. And we look forward to hopefully
18 seeing that very progress measured and reported on by the
19 monitors going forward.
20    So we really view the period 20 report as a
21 springboard, if you will, into this corrective action period
22 that we all got into discussion around. And Plaintiffs are
23 rooting hard for this system of initiatives of corrective
24 action plans to take hold and really start moving performance
25 toward compliance with the exit standards.

1      THE COURT: Yes. That's one thing to propose a plan
2 and it's something else entirely to see to its execution. The
3 hard work is still to be done. I mean, not that it hasn't been
4 hard work, but there is more hard work to be done for sure, but
5 this seems to be a giant step in the right direction, or maybe
6 several giant steps.
7      Ms. Drysdale-Crown, are you there to speak for the
8 State in this?
9      MS. DRYSDALE-CROWN: Yes, I will, your Honor. And
10 then I will turn it over to Director Hertel and Director
11 Starling. Just a couple brief comments. On behalf of the
12 department today, the Michigan Department of Health and Human
13 Services, Director Hertel, will address the court first and
14 then Demetrius.
15      Your Honor, the court directed, as the Plaintiffs and
16 the court monitor said during our last January status
17 conference, for the department to work together with the
18 monitors as well as the Governor's office and the Department of
19 Attorney General to come up with an action plan in the areas
20 that the MISEP has found that the State is still deficient.
21      Further, the court ordered that the State was to
22 designate three or four persons to work with the monitors in
23 formulating this corrective action plan. Specifically this
24 court directed that the formulation and oversight of the
25 corrective action plan include designees from the Governor's

1  office, Director Hertel, Director Starling and the Department
2  of Attorney General.
3  　　　　In a coordinate distractive, your Honor, Governor
4  Whitmer's designee is Alicia Moon with the executive office of
5  the Governor. She is present as an attendee to this hearing.
6  Director Hertel has designated herself and Lewis Roubal who is
7  a senior chief deputy director. Lewis Roubal is also an
8  attendee at this hearing.
9  　　　　Director Starling has designated himself and Jennifer
10 Wrayno, the State Bureau Administrator for the Business Service
11 Center 5. The Department of Attorney General designees are
12 myself and Neil Giovanatti. And the Children's Services Agency
13 within the department liaison designee is Kelly Sesti who is
14 the Director of Continuous Quality Improvement.
15 　　　　Your Honor, this group worked hard to develop the
16 strategies embedded within this corrective action plan, and
17 that there are additional steps that need to be taken. The
18 State believes that these corrective action strategies will
19 assist the department improving its performance in those 14
20 identified commitments.
21 　　　　The corrective action plan group met regularly, as you
22 heard from the monitors and from the Plaintiffs, under the
23 guidance of the monitoring team and with input from the
24 Plaintiffs. The department has already begun working on some
25 of these corrective actions and seeks your approval of this

1 plan.

2 Our next steps, the department proposes that in accord
3 with your directive at the last conference the parties and
4 monitors meet with your Honor or your designee by conference
5 call or Zoom on a quarterly basis. At these quarterly meetings
6 the department proposes that the parties and the court may
7 discuss the department's efforts to implement these strategies
8 identified in the corrective action plan and how these
9 strategies are impacting the department's performance in the
10 MISEP.

11 Because the MISEP 21 report will not be issued until
12 the end of the year, we propose that the next formal status
13 conference be held in mid to late January 2023 with these
14 quarterly meetings in-between.

15 And with that, I'd like to turn it over to Director
16 Hertel.

17 THE COURT: Thank you.

18 Director.

19 DIRECTOR HERTEL: Good afternoon. And I apologize
20 again for being a couple minutes late here.

21 Over the last three months, the department has
22 dedicated significant resources to identify core strategies to
23 address the 14 areas of the MISEP where the department has
24 struggled to meet the performance standard. The result of this
25 process is the corrective action plan before you.

1              I'd like to thank both the monitoring team and
2    Children's Rights for participating in so many discussions
3    during the CAP development.  I believe that by implementing the
4    strategies that we've identified in these corrective action
5    plan we will make substantial progress to improve our
6    performance, but more importantly I believe that these
7    strategies will improve safety for children and decrease the
8    time to permanency for the kids that we have in our care.
9              I am personally overseeing many of the strategies
10   identified in the CAP, and I am confident that through the
11   dedicated efforts of Director Starling and the Children's
12   Services administration staff that the department will be able
13   to make progress, the progress that we're hoping to achieve.
14             It remains my goal to ensure that when a child enters
15   the department's care that child is placed in a safe and secure
16   placement, receives the services that they need and achieves
17   permanency as soon as possible.  Myself, the Governor, Director
18   Starling and our entire department are committed to this goal.
19             I will now turn things over to Demetrius who will
20   address the MISEP 20 report and some of the ongoing
21   maltreatment in care reviews.
22             THE COURT:  Before you turn it over to Director
23   Starling, let me commend you particularly on your personal
24   involvement in so many of these areas, and particularly in the
25   area of avoiding temporary shelters and placements for children

1  both under and over 15 years of age. I am betting that is
2  going to make a huge difference between very, very low
3  compliance that we see in the past and what I expect will
4  happen now. It's a big job, and having someone in your
5  position looking over all these placements is going to make a
6  mountain of difference. I'm confident of it. So thank you --
7  and for everything.
8      DIRECTOR HERTEL: I appreciate that acknowledgement,
9  and I'm really optimistic about the progress that we're all
10 going to make this year together. So thank you.
11     THE COURT: You're welcome. Thank you.
12     Director Starling.
13     DIRECTOR STARLING: Thank you, your Honor, and thank
14 you, Director Hertel. Good afternoon.
15     So I'm just going to echo Director Hertel's comments,
16 as I strongly believe that the corrective action plans
17 developed over the last three months will really help our
18 department achieve the compliance in the 14 MISEP commitments
19 and will also enhance practice and focus on the remaining
20 commitments.
21     The department worked in partnership in our private
22 agency and common leaders to develop strategies within the CAP.
23 We have designated knowledgeable, experienced senior staff as
24 leads for the commitments assigned to the corrective action
25 plan. And I am personally committed, committing assigning to

1    the corrective action plan myself, and I am personally
2    committed to working with these senior staff and the monitoring
3    team to implement strategies in the CAP.  In fact, I am happy
4    to tell the court that many of the strategies are already in
5    process, and the department is committed to working with the
6    monitoring team to develop methods to demonstrate realtime
7    progress.  Regarding the most recent MISEP report, we continue
8    to see progress towards many of the MISEP commitments.
9            Important things to highlight, the department has
10   consistently achieved compliance for eight commitments for
11   every monitoring period since the creation of the MISEP.  Many
12   of these commitments are cored to the original focus of the
13   case.
14           For example, the department has consistently met the
15   performance metric for 6.21b, which ensures that workers will
16   visit foster children every month, and for 6.7, which ensures
17   that children are not placed in foster homes with too many
18   children.
19           In addition, the department has routinely met or come
20   within a few percentage points of meeting the performance
21   metrics for 15 additional commitments.  This includes
22   commitments like CPS investigator caseloads, 5.3, and timely
23   completed CPS investigations, 6.11.  Also, as addressed in the
24   report, five commitments will now be moved to the To Be
25   Maintained status.

1        It is through the efforts of child welfare staff that
2   we have been able to make these -- or achieve these results,
3   but we are optimistic that through the implementation of the
4   CAPs additional commitments will move towards compliance.
5        Secondly, the department has begun working with the
6   monitoring team to ensure their confidence in our maltreatment
7   in care data.  We look forward to continuing this process to
8   develop realtime maltreatment in care data for the court
9   throughout the year.
10       As Director Hertel mentioned, children's safety
11  remains our top priority.  In addition, I continue to work
12  closely with Mr. Ryan regarding safety in CCI vicinities.  As
13  identified in the CAP for commitment 5.1, we intend to take
14  some very significant steps, including structural changes
15  within the Children's Services Agency, over the coming months
16  to further ensure appropriate oversight of CCIs.
17       In sum, with the implementation of the CAPs and the
18  ongoing realtime review of the maltreatment in care data, we
19  believe that the department remains on track to demonstrate
20  sustainable and improved performance and a viable plan to exit.
21       With that, unless the court has any questions, your
22  Honor, I will turn it back over to Cass.  Thank you.
23       THE COURT:  Thank you.  Let me just say before we wrap
24  it up, I'm encouraged that in a number of areas the State has
25  moved far enough along that we ought to consider at least

```
 1   exiting some of those areas from ongoing review.  I'm not
 2   giving you a timeline, but certainly progress -- I know
 3   progress has been made, but we can look at a number of areas
 4   down the road soon.  I'm not talking about the whole kit and
 5   caboodle at this point, but there are pieces of it that are
 6   very far along, and I'm encouraged by that.
 7              DIRECTOR STARLING:  Thank you, your Honor.
 8              THE COURT:  Ms. Drysdale-Crown.
 9              MS. DRYSDALE-CROWN:  And thank you, your Honor, for
10   hearing our comments today and the fact that you approve the
11   corrective action plan that's been submitted to the court and
12   consider having the quarterly meeting so that we can keep you
13   or your designee abreast of what's happening.
14              THE COURT:  Yes.  I'm going to designate myself to
15   stay on top of this.  It's been a long road, and I'm not ready
16   to get off it yet, so ...
17              MS. DRYSDALE-CROWN:  Thank you, your Honor.
18              THE COURT:  So let's try and set something for the end
19   of July.  Is that reasonable?  Is everybody going to be around?
20              MS. BARTOSZ:  Yes, your Honor.
21              THE COURT:  Lisa, are you still there?
22              THE CLERK:  I am.
23              MR. RYAN:  Your Honor, can I suggest that Eilene and I
24   confer with your staff and the parties and schedule something
25   this week offline?
```

```
 1                THE COURT:  Sure.  That's fine.
 2                MR. RYAN:  Thank you.
 3                THE COURT:  That's good.  Now, I'm going to be gone
 4    only for one week.  Actually, I'm not going to be gone, but my
 5    grandkids are going to be here the week of August 8.  So that's
 6    not a good week for meetings.  Hopefully it's going to be a
 7    very good week at home.
 8                Thank you, everybody.  Hard work with more still to
 9    come, but we're starting to see at least flags toward the
10    finish line down the road sooner than we might have anticipated
11    in January.  So thank you.
12                MS. DRYSDALE-CROWN:  Thank you, your Honor.
13                MS. BARTOSZ:  Thank you, Judge.
14                DIRECTOR STARLING:  Thank you, your Honor.  Appreciate
15    it.  Enjoy your time with your grandkids.
16                THE COURT:  That will be after I see you again.
17                DIRECTOR STARLING:  Oh, okay.
18                THE COURT:  Thanks.
19                (The proceedings concluded at 2:37 p.m.)
20                     -   -   -
21
22
23
24
25
```


*CERTIFICATE OF COURT REPORTER*

I, Sheila D. Rice, Official Court Reporter of the United States District Court, Eastern District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing pages is a correct transcript from the record of proceedings in the above-entitled matter.

*s/Sheila D. Rice*
Sheila D. Rice, CSR-4163, RPR, RMR
Federal Official Court Reporter
United States District Court
Eastern District of Michigan

Date: 05/23/2022
Detroit, Michigan