UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE B., et al.,

Plaintiffs,

v.

GRETCHEN WHITMER, et al.,

Defendants.

No. 2:06-cv-13548

HON. SUSAN K. DECLERCQ

______________________________________/

**REPLY TO PLAINTIFFS' RESPONSE TO MOTION FOR RELIEF FROM THE MODIFIED IMPLEMENTATION, SUSTAINABILITY, AND EXIT PLAN (ECF NO. 294) AND TO TERMINATE JURISDICTION**

Neil Giovanatti (P82305)
Assistant Attorney General
Attorney for Defendants
MI Dep't of Attorney General
525 W. Ottawa Street
PO Box 30212
Lansing, MI 48909
(517) 241-1050
giovanattin@michigan.gov

Dated: October 30, 2026

# TABLE OF CONTENTS

Page


Table of Contents ........ i

Index of Authorities ........ ii

Introduction ........ 1

I. *Horne* governs; the MISEP must terminate absent an ongoing violation of federal law. ........ 2

II. Plaintiffs fail to argue or provide any evidence of an ongoing violation of federal law. ........ 8

III. Plaintiffs' repeated statements that Defendants are not in full compliance with the MISEP are irrelevant and the MISEP provisions do not reflect any federal law. ........ 12

A. Plaintiffs fail to contest most of Professor Ryan's opinion regarding MIC, and misconstrues the sole opinion they address. ........ 14

B. Plaintiffs fail to address evidence demonstrating flaws in the monitoring team's MIC reviews and misstate Shay Newell's testimony. ........ 15

IV. Michigan's accountability structures demonstrate a durable remedy. ........ 16

V. The equities strongly support terminating the MISEP and returning the foster care system to the State's sovereign authority. ........ 18

VI. Plaintiffs still lack an adequate class representative. ........ 19

Conclusion and Relief Requested ........ 20

Certificate of Service (e-file) ........ 22

# INDEX OF AUTHORITIES

Page

**Cases**

*Binta B. ex rel. S.A. v. Gordon*,
710 F3.d 608 (6th Cir. 2013) .......... 19

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
489 U.S. 189 (1989) .......... 10

*Doe v. Briley*, No. 3:73-cv-6971,
2016 U.S. Dist. LEXIS 145570 (M.D. Tenn. Oct. 20, 2016) .......... 20

*Frew v. Hawkins*,
540 U.S. 431 (2004) .......... 5

*Horne v. Flores*,
557 U.S. 433 (2009) .......... 2, 3, 4, 5, 6, 7, 8

*Humphrey v. U.S. Attorney General's Office*,
279 Fed. App'x 328 (6th Cir. 2008) .......... 9

*Jackson v. Los Lunas Cmty. Program*,
880 F.3d 1176 (10th Cir. 2018) .......... 4, 5, 7, 17

*Jeremiah M. v. Crum*,
695 F. Supp. 3d 1060 (D. Alaska 2023) .......... 10, 11

*John B. v. Emkes*,
710 F.3d 394 (6th Cir. 2013) .......... 3, 4, 7, 17

*Keira M. v. Quin*, No. 3:25-cv-00566,
2026 U.S. Dist. LEXIS 75469 (M.D. Tenn. Apr. 7, 2026) .......... 11

*Mary B. v. Dompeling*, No. 3:22-cv-00129,
2026 U.S. Dist. LEXIS 68680 (D. Alaska March 31, 2026.) .......... 11

*Palma v. Johns,*
27 F.4th 419 n.1 (6th Cir. 2022) .......... 9

*Rufo v. Inmates of Suffolk County Jail,*
502 U.S. 367 (1992) .......... 5, 6, 12

*Shakman v. Pritzker*,
43 F.4th 723 (7th Cir. 2022).......... 7, 8

*Sosna v. Iowa*,
419 U.S. 393 (1975) .......... 19

*United States v. City of Cleveland*, No. 1:25-cv-1046,
2026 U.S. Dist. LEXIS 139521 (N.D. Ohio May 8, 2026) .......... 7

*United States v. Michigan*,
131 F.4th 409 (6th Cir. 2025).......... 6

## INTRODUCTION

Defendants submit this reply brief in response to Plaintiffs' Response in Opposition to Defendants' Rule 60(b)(5) Motion for Termination of the Consent Decree (ECF No. 392, PageID.11249–11305) and in further support of Defendants' motion (ECF No. 383, PageID.10455–10514).

Plaintiffs' Opposition amounts to a reiteration of the Modified Implementation, Sustainability, and Exit Plan (ECF No. 294, MISEP) and repeatedly states that Defendants have not achieved the MISEP's terms—a point Defendants do not dispute and is obvious from the monitoring team's biannual reports. But Plaintiffs miss the point of Defendants' motion. They do not counter Defendants' argument that they are not currently in violation of *any* federal law. They submit no factual evidence to support a violation of law; they do not contest the veracity of the eight expert and fact declarations demonstrating there is no current violation; and Plaintiffs' counsel do not have a class representative whose circumstance could even suggest a current violation of law.

Instead, Plaintiffs take issue with the standard appliable to Rule 60(b)(5) motions articulated by the Supreme Court in *Horne v. Flores*, 557 U.S. 433 (2009). Plaintiffs contend previous Supreme Court caselaw should govern instead of *Horne* and that Defendants must comply with *every word* of the MISEP to *ever* exit—a prospect that is both unlikely and not the law under *Horne*.

The Court should not be distracted by Plaintiffs' refusal to engage with the evidence demonstrating Defendants' adherence to federal legal requirements or Plaintiffs' blind demand for adherence to the MISEP. Rather, as the only evidence before the Court makes clear, the Court should find Defendants are not in violation of the federal law, grant Defendants' motion, and allow oversight of Michigan's foster care system to return to the State's sovereign authority.

## I. *Horne* governs; the MISEP must terminate absent an ongoing violation of federal law.

The parties agree on the basic legal standard applicable to this motion: the Court must take a "flexible approach" assessing whether there has been a "change in facts or law" and whether Defendants have demonstrated a "durable remedy." (*Compare* Defs.' Mtn.,

PageID.10477–10483 *with* Pls.' Opp., PageID.11259–11261.) Where the parties' split is the import of *Horne*, the Supreme Court's most recent case to address the standard for Rule 60(b)(5) motions. As Defendants articulate in depth in their motion, *Horne* changed the game and now interprets the 'change of facts' test to require that a court make "up-to-date factual findings" that the defendant is in continuing violation of federal law to sustain a consent decree. *Horne*, 557 U.S. at 450, 456.

Taking each of Plaintiffs' four counterarguments in turn, Plaintiffs first contend that *Horne*, and the Sixth Circuit precedent applying *Horne* to consent decrees, *John B. v. Emkes*, 710 F.3d 394 (6th Cir. 2013), are distinguishable. (Pls.' Opp. at PageID.11262–11269.) Plaintiffs argue that *Horne* addressed a court-imposed injunction following a finding of liability and that the consent decree in *John B.* included an admission of liability by defendants. (*Id.* at PageID.11263–11264, 11267, 11275–11276.) But a finding or admission of liability is irrelevant to a Rule 60(b)(5) motion. Neither *Horne* nor *John B.* distinguish the orders at issue in those cases from a consent decree without an admission of liability, like the MISEP. Nor would they because the basic analysis underscoring both decisions whether the

continued involvement of the court is appropriate, which both *Horne* and *John B.* found not to be the case because there was no longer a violation of federal law. *Horne*, 557 U.S. at 448, 450; *John B.*, 710 F.3d at 398; *see also Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1193, 1198 (10th Cir. 2018) ("And had the Court intended to limit *Horne* to institutional reform litigation involving only injunctions and court crafted orders, it could have easily done so explicitly. The Court, however, did not so limit its holding.").

Distinct from a private settlement, a consent decree is a judicial order where the court continues to exercise jurisdiction over the proceeding. *Horne* makes clear that a court's continued jurisdiction, when there is no longer a violation of law leads to breaches of federalism and inappropriate reliance on policy-based (rather than legal-based) obligations—two factors that undergird the opinion. 557 U.S. at 450. "Continued enforcement" of a consent decree by the Court absent an ongoing violation of law "is not only unnecessary, but improper." *Id.*; *John B.*, 710 F.3d at 413.

Plaintiffs' second counterargument—their reliance on Supreme Court caselaw preceding *Horne*—carries no water in the face of the

clear and binding precedent of *Horne*. (Pls.' Opp., PageID.11267–11268, 11271, 11277.) For example, Plaintiffs heavily rely on *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367 (1992). (PageID.11260–11264, 11268, 11271, 12177.) But, while *Horne* endorsed the basic framework of *Rufo*'s Rule 60(b)(5) analysis (significant change and durable remedy) and *Rufo*'s assignment of burden to the movant, *Horne*, 577 U.S. at 447, 453, *Horne* overrules two of *Rufo*'s secondary holdings.

First, *Rufo*'s suggestion that courts could continue to enforce consent decree provisions that eclipsed federal law, *see Rufo*, 502 U.S. at 389, 391; (*see also* Pls.' Opp., PageID.11271),[1] was undoubtedly overruled because *Horne* focuses on findings of ongoing violations of federal law to continue a decree and repeatedly castigates decree terms that exceed federal law. *Horne*, 557 U.S. at 448–50; *see also Jackson*, 880 F.3d at 1191.

---

[1] Plaintiffs also rely on comparable language in *Frew v. Hawkins*, 540 U.S. 431, 439 (2004). (*See* Pls.' Opp., PageID.11267, 11271.) *Frew* is distinguishable because it addresses a motion to enforce, rather than a motion to terminate a consent decree. Regardless, even if *Frew* endorsed Plaintiffs' view that a court can continue a consent decree with provisions that exceed federal law despite the defendant's current compliance with federal law, *Horne* overruled that aspect of *Frew*.

Second, *Rufo*'s note that "[o]rdinarily" a change of fact cannot be based on "events that actually were anticipated at the time [the parties] entered into a decree[,]" *Rufo,* 502 U.S. at 391; (*see also* Pls.' Opp., PageID.11277), cannot square with *Horne*'s requirement for up-to-date evidence of a violation of law. Regardless of whether the factual change that allowed the defendant to come into compliance with federal law was anticipated when the decree was executed, the fact that the defendant is not currently in violation of law is sufficient to exit a consent decree under *Horne*.

As to their third counterargument, Plaintiffs rely on a series of lower court cases that do not move the needle. Plaintiffs selectively quote dicta from a footnote in *United States v. Michigan*, 131 F.4th 409 (6th Cir. 2025), to support their position. (Pls.' Opp. at PageID.11265.) But the Sixth Circuit in *United States v. Michigan* followed *Horne* as Defendants advocate, finding there remained an ongoing violation of law to support the decree. 131 F.4th at 429 (finding the State's violations of the relevant law were "enduring"). Plaintiffs also cite an out-of-district, unpublished decision that acknowledged *Horne* but did not assess if the defendant in the case was in continued violation of law.

*United States v. City of Cleveland*, No. 1:25-cv-1046, 2026 U.S. Dist. LEXIS 139521, at *31–34 (N.D. Ohio May 8, 2026). The Court should disregard this decision as it is not binding and is pending appeal (No. 26-3617 (6th Cir.)). Plaintiffs likewise list three other non-binding, out-of-circuit district court decisions purporting to support their position, all of which the Court need not consider. (Pls.' Opp., PageID.11269, n 4.)[2]

Glaringly, Plaintiffs cite no Court of Appeals decisions endorsing their restrictive view of *Horne*. Plaintiffs also fail to engage with the Seventh and Tenth Circuit decisions that expressly endorse Defendants' application. *See Shakman v. Pritzker*, 43 F.4th 723, 730–32 (7th Cir. 2022); *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1193, 1203 (10th Cir. 2018). Put plainly, the Courts of Appeals—including the Sixth Circuit in *John B.*—uniformly reject Plaintiffs' position, and support Defendants'.

Plaintiffs' fourth and final counterargument resorts to policy arguments, suggesting consent decrees should not become vulnerable

[2] A similar proceeding involving a motion to terminate a consent decree for Georgia's foster care system, which Plaintiffs cite, is on appeal in the Eleventh Circuit, with oral argument scheduled for November 4, 2026. *Kenny A. v. Dep't of Human Resources of the State of Georgia*, No. 25-13412 (11th Cir.).

once the defendant is no longer in violation of federal law as it may "disincentivize plaintiffs from even considering settlements." (Pls.' Opp., PageID.11268–11269.) But *Horne* is clear on this exact point: courts should remain involved only if there is a continuing violation of law. And to the extent a plaintiff seeks to impose obligations on defendants that go beyond what the law requires, the courts are not the appropriate forum. *See Shakman v. Pritzker*, 43 F.4th 723, 732 (7th Cir. 2022) (relying on *Horne* and finding the consent decree's "continued application has put a federal court in a role tantamount to serving as an indefinite institutional monitor . . . focused much more on ensuring that the Governor implements best practices rather than eliminates an ongoing violation of federal law[,]" which "is antithetical to the limited role the Constitution created for the Third Branch") (internal quotes omitted).

## II. Plaintiffs fail to argue or provide any evidence of an ongoing violation of federal law.

Plaintiffs do not contend Defendants are currently in violation of *any* federal law in their Opposition. Plaintiffs had over three months to identify evidence to support a current violation of federal law, including

through five depositions of Defendants' witnesses. (Stipulated Order Re: Discovery, PageID.11007–11009.) Despite this opportunity, Plaintiffs failed to identify and present such evidence or argue a continuing violation of federal law, thus waiving any opposition to Defendants' arguments that they are *not* currently in violation.[3] *See Palma v. Johns*, 27 F.4th 419, 461 n.1 (6th Cir. 2022) ("Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the moving party's arguments."); *Humphrey v. U.S. Attorney General's Office*, 279 Fed. App'x 328, 331 (6th Cir. 2008) (noting that a plaintiff waives his arguments by failing to oppose defendant's motion).

The only references in Plaintiffs' Opposition to federal laws that purportedly impose obligations on Defendants are brief discussions of substantive due process rights under the Fourteenth Amendment (Pls.' Opp., PageID.11270), and an alleged right to familial association (*id.* at

[3] Plaintiffs write that they will examine the declarants at an evidentiary hearing "should this Court deem it advisable to take testimony on these declarations." (Pls.' Opp., PageID.11261.) Plaintiffs had their chance to dispute the declarations through depositions of the declarants, submission of their own evidence, and their Opposition.

PageID.11295). Notably, Plaintiffs do not contend Michigan is in violation of these rights.[4]

For the substantive due process point, Plaintiffs take issue with Defendants' use of the word "prescribed" to describe this right, suggestion scope of the right is more broad. (Pls.' Opp., PageID.11270.) Word choice aside, the Supreme Court has described the right as limited to "basic human needs," language quoted in both parties' briefs. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989); (*see* Pls.' Opp., PageID.11270; Ds' Mtn., PageID.10490.) And Plaintiffs neither dispute Defendants' articulation of the substantive due process rights at issue (see Defs.' Mtn., PageID.10488–10491), nor argue Michigan is in violation of Plaintiffs' substantive due process rights.

Related to the familial association right, Plaintiffs note *Jeremiah M. v. Crum*, 695 F. Supp. 3d 1060, 1095–96 (D. Alaska 2023), describing how the court denied the defendant's motion to dismiss a familial association claim related to parent-child visitations. (Pls.' Opp.,

---

[4] Plaintiffs concede they "do not now seek to prove any claim of liability against Defendants." (Pls.' Opp., PageID.11303.)

PageID.11296.) While true, the same court dismissed familial association claims for siblings and grandparents. *Id.* at 109.[5] And as to parental visits, *Jeremiah M.* did not articulate a legal standard for parental visitation claims and did not establish a constitutional right to twice monthly parental visits as articulated in MISEP provision 6.23. Thus, to the extent Plaintiffs suggest Defendants' lack of compliance with MISEP provision 6.23 demonstrates a violation of Plaintiffs' purported familial association rights, *Jeremiah M.* certainly does not support such a conclusion. Defendants maintain that no such right exists under the caselaw cited in their motion (Defs.' Mtn., PageID.10491–10492) and, even if such right existed, there is no evidence that Defendants are in violation of such a right or deliberate indifferent to any purported violation.[6]

---

[5] *Jeremiah M.* was later dismissed entirely due to a lack of standing. *See Mary B. v. Dompeling*, No. 3:22-cv-00129, 2026 U.S. Dist. LEXIS 68680 (D. Alaska March 31, 2026.)

[6] Plaintiffs also note that a district court held a right to sibling visitations. (Pls.' Opp., PageID.11296 (citing *Keira M. v. Quin*, No. 3:25-cv-00566, 2026 U.S. Dist. LEXIS 75469 (M.D. Tenn. Apr. 7, 2026) (available at PageID.10871–10911.) Michigan has been compliant with the sibling visitation MISEP provision, 6.24, for three consecutive reporting periods. (Monitoring Report, MISEP Reporting Period 28, PageID.11068–10911.) Thus, even if a right to sibling visitations exists

Consistent with *Horne* and *John B.*, the Court should make up-to-date findings based on the evidence properly before the Court: Defendants' declarations demonstrate both substantial changes of fact[7] and that Defendants are not currently in violation of any federal law. (See Defs.' Mtn., PageID.10493–10505). Plaintiffs have waived any opposition to these arguments. Accordingly, based on Defendants' uncontested declarations, the Court should find Defendants are not in violation of federal law and terminate the MISEP.

## III. Plaintiffs' repeated statements that Defendants are not in full compliance with the MISEP are irrelevant and the MISEP provisions do not reflect any federal law.

Throughout their Opposition, Plaintiffs repeatedly state Defendants are not in compliance with the MISEP. (Pls.' Opp., PageID.11278–11298.) But compliance with the MISEP is irrelevant to this motion. As addressed above, the relevant inquiry is if Defendants

---

(which Defendants dispute), there is no argument that Michigan is in violation of such a right.

[7] Notably, Plaintiffs concede substantial changes in facts occurred; they simply dispute whether those changes may be considered. (Pls.' Opp., PageID.11277.) As addressed above, the *Rufo* dicta Plaintiffs rely upon to exclude the conceded substantial changes of fact was overruled by *Horne*.

are in violation of federal law. *Horne*, 557 U.S. at 450; *John B.*, 710 F.3d at 413. Plaintiffs do not contend that any MISEP provision is associated with a federal legal requirement. In particular, there is no constitutional, statutory, or regulatory obligation requiring Michigan to:

- maintain a maltreatment in care (MIC) rate under 9.07 (6.1);
- oversee contracted agencies under the inarticulable, subjective standard the monitors seek to impose (5.1);
- not place any foster child in an emergency or temporary facility for more than 30 days (6.8);
- not place any foster child in an emergency or temporary facility more than two times per year (6.9);
- comply with every aspect of its policy for home inspections for relative placement before placement (6.10); or
- comply with every aspect of its psychotropic medication policy for every child that is prescribed such medications by their doctor (6.33 & 6.34).

Since these MISEP provisions (and all others active provisions) are not tied to federal legal obligations, the Court should not consider Michigan's compliance for purposes of this motion.

Though Plaintiffs' arguments regarding specific MISEP provisions require no further rebuttal, Defendants articulate a handful of specific flaws in Plaintiffs' MIC arguments:

### A. Plaintiffs fail to contest most of Professor Ryan's opinion regarding MIC, and misconstrues the sole opinion they address.

In their Opposition, Plaintiffs do not engage with the substantial evidence of Defendants' efforts to improve child safety for children in Michigan's foster care system. They likewise ignore the numerous opinions Professor Ryan offers regarding Michigan's efforts to reduce MIC and the defects in comparing Michigan's MIC rate with other states as required by MISEP provision 6.1. (Ryan Report, PageID.10592–10599.) Instead, Plaintiffs focus on three narrow recommendations in Professor Ryan's expert report based on his review of two years (2023-2024) of MIC disposition summaries, arguing Defendants should not be allowed out of the MISEP until Defendants implement Professor Ryan's recommendations. (Pls.' Opp., PageID.11280–11281, 11301; Ryan Expert Report, PageID.10598–10599.) Plaintiffs ignore that Michigan implemented versions of Professor Ryan's recommendations *before* receiving them. (Newell

Decl., PageID.10769–10770; Brotherson Decl., PageID.10795, 10798.) Professor Ryan states as much. (Ryan Expert Report, PageID.10599.) Michigan's proactive implementation of child safety improvements demonstrates that it can identify areas needing improvement and implement efforts to remedy those areas without outside experts.

### B. Plaintiffs fail to address evidence demonstrating flaws in the monitoring team's MIC reviews and misstate Shay Newell's testimony.

Plaintiffs' Opposition reiterates the monitoring team's ongoing MIC reviews. (Pls.' Opp., PageID.11281.) Yet, Plaintiffs fail to engage with any of the evidence Michigan provided articulating the flaws in the monitors' review and the lack of import of those reviews on foster children's safety. (Pls.' Opp., PageID.11281; Newell Decl., PageID.10770–10772; Defs.' Responses to MMT's MIC Reports, ECF No. 391, 373, 360, 344.)

Plaintiffs also falsely claim testimony from Shay Newell—the Director of Maltreatment in Care Unit—somehow "refute[s]" Michigan's disagreements with the monitoring team's MIC reviews or provides an "admission" that the monitoring team "objectively" generates their MIC findings. (Pls.' Opp., PageID.11282.) A plain reading of the cited

testimony suggests nothing to this effect. (Newell Dep. Tr. 71:3–71.22, PageID.11439.) While Ms. Newell's testimony reflects that the monitoring team shares their results with Michigan before submitting their final report to the Court and that Michigan has agreed with the monitoring team on occasion, she provides no testimony supporting the monitoring team's review. (*Id.*) And Ms. Newell's declaration directly takes issue with the monitoring team's MIC review. (Newell Decl., PageID.10770–10772).

## IV. Michigan's accountability structures demonstrate a durable remedy.

As addressed in Defendants' motion, the overwhelming evidence demonstrates a durable remedy through Michigan's well-established continuous quality improvement efforts. (Defs.' Mtn., PageID.10505–10506.)

In Opposition, Plaintiffs reiterate Defendants have not complied with certain MISEP provisions. (Pls.' Opp., PageID.11298–11298.) As addressed previously, compliance with the MISEP is irrelevant for consideration of this motion. Rather, for purposes of a durable remedy, evidence of monitoring and oversight tools is sufficient to meet this

standard. *See John B.*, 710 F.3d at 413; *Jackson*, 880 F.3d at 1203. Defendants maintain such tools and accordingly meet this low bar.

Plaintiffs also contend the monitoring team has "consistently raised serious reservations about the quality of [Michigan's] accountability structures." (Pls.' Opp., PageID.11299.) But the evidence cited for this specious statement does not reference the monitor team's comments on Michigan's accountability structures. Instead, Plaintiffs reference the monitoring team's stats about individual investigations (MIC and licensing) and psychotropic medication policy compliance. (*Id.*) These statistics are unrelated to Michigan's internal accountability structures, which were enthusiastically endorsed by three expert witnesses and the federal government. (Ryan Report, PageID.10606, 10608; Carter Report, PageID.10529, 10547, 10549, 10551; Nitze Decl., PageID.10643–10643; Rostoni Decl., PageID.10679; Click Decl., PageID.10654.)

The Court should find Defendants established a durable remedy.

## V. The equities strongly support terminating the MISEP and returning the foster care system to the State's sovereign authority.

As articulated in Defendants' motion, the MISEP now offers no benefits to Michigan; instead, it solely imposes unnecessary burdens. (Defs.' Mtn., PageID.10508–10512.) Plaintiffs seek to downplay and dismiss the MISEP's burdens. (Pls.' Opp., PageID.11300-11303.) But Director Tim Click made this point stark in his declaration: Michigan spends $2.7M on this litigation per year and gains nothing. (Click Decl., PageID.10663–10664.) After all these years, the monitoring team does not identify issues or offer solutions Michigan needs. (*Id.*)

Professor Melissa Carter's expert report further articulates this burden on Michigan, noting the experience of several other states who have been bound to long term consent decrees related to the foster care system. (Carter Report, PageID.10529.) And though Plaintiffs make clear they are perturbed by Professor Carter's opinions (Pls.' Opp., PageID.11272–11273), Plaintiffs do not actually contest any of her opinions and instead contend they are irrelevant. (*Id.*) But, beyond Professor Carter's declaration providing the Court with foundational background on this type of litigation, her opinions are directly relevant

to the equitable considerations (among others) the Court should consider in adjudicating this motion. After all, if the MISEP is functionally irrelevant at this point and simply a burden on the State, as Professor Carter opines and other witnesses unrefutably describe, the equities strongly counsel terminating the MISEP. (Carter Report, PageID.10529; Click Decl., PageID.10663, 10665.)

## VI. Plaintiffs still lack an adequate class representative.

Finally, Plaintiffs' counsel implicitly concedes a lack of a class representative to adequately represent the class at this late stage of the case. While Plaintiffs contend two cases "foreclose Defendants' arguments regarding class representation[,]" (Pls.' Opp., PageID.11303), those cases are about mootness; not adequacy of representation. In both, the class representative still adequately represented the class even though the individuals' claims were mooted. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Binta B. ex rel. S.A. v. Gordon*, 710 F3.d 608, 619 (6th Cir. 2013).

Here, Defendants do not dispute that the case remains live for present members of the class. But each named class representative's claims have been moot for at least a decade, and it seems impossible

that such a class representative could adequately represent the class at this point. Plaintiffs' counsel also provides no representation that the class representatives are still in any way involved with this litigation or that she has even spoken to any class representative since the case originally settled in 2008.

Given the age of this case with no substituted class representative, decertification—as well as termination of the MISEP—is appropriate absent substitution of an adequate class representative. *Doe v. Briley*, No. 3:73-cv-6971, 2016 U.S. Dist. LEXIS 145570 (M.D. Tenn. Oct. 20, 2016) (available at PageID.10999–11006).

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above and in Defendants' moving brief, Defendants respectfully request this Court grant Defendants relief from

the MISEP, terminate the Court's jurisdiction, close this case, and grant Defendants any other relief the Court deems just and proper.

Respectfully submitted,

*<u>/s/ Neil Giovanatti</u>*
Neil Giovanatti (P82305)
Assistant Attorney General
Attorney for Defendants
MI Dep't of Attorney General
525 W. Ottawa Street
PO Box 30212
Lansing, MI 48909
(517) 241-1050
giovanattin@michigan.gov

Dated: October 30, 2026

**CERTIFICATE OF SERVICE (E-FILE)**

I hereby certify that on October 30, 2026, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*/s/ Neil Giovanatti*
Neil Giovanatti (P82305)
Assistant Attorney General
Attorney for Defendants